Sherry GIVENS and Wendel Givens, Plaintiffs-Appellees Cross Appellants,

v.

LEDERLE, etc., Defendant-Appellant Cross Appellee.

Sherry GIVENS and Wendel Givens, Plaintiffs-Appellees,

v.

LEDERLE, etc., Defendant-Appellant.

Nos. 75–3573, 75–3672.

United States Court of Appeals, Fifth Circuit.

Aug. 8, 1977.

Rehearing Denied Sept. 8, 1977.

Thomas T. Steele, W. Donald Cox, Tampa, Fla., for Lederle.

Michael D. Martin, Lakeland, Fla., for Sherry and Wendel Givens.

Before THORNBERRY, GODBOLD and FAY, Circuit Judges.

THORNBERRY, Circuit Judge:

This is a consolidated products liability case, with cross-appeal for additur, involving the Sabin oral polio vaccine. The jury verdict defendant appeals from is actually the second one. After the first verdict came down in defendant's favor, the trial court granted plaintiffs' motion for new trial on the basis of a case decided after trial, *Reyes v. Wyeth Laboratories,* 498 F.2d 1264 (5 Cir. 1974), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974). The granting of the motion forms the crux of the appeal, though the plaintiffs have filed a cross-appeal for additur as to part of the verdict. We affirm on all points in the appeal, and reverse in the cross-appeal.

Plaintiff Sherry Givens took her daughter Wendy to her pediatrician, Dr. Raymond LaRue, on November 8, 1971. Dr. LaRue administered the Sabin oral polio vaccine manufactured by defendant, Lederle, to Wendy on that day, and also on December 8, 1971, and January 11, 1972. On January 20, 1972, Sherry Givens developed polio. She now suffers total permanent paralysis in the lower part of her body and partial permanent paralysis in the upper part. She is confined to a wheelchair. Previously, Sherry had been quite active athletically, and had been of major assistance in enlarging the Givens' country home. Mrs. Givens has never received a polio vaccination of either kind (Salk injection or Sabin oral).

Lederle, a division of American Cyanamid, manufactured the vaccine in question. The package containing the doses of vaccine included an insert describing Orimune, which was the name Lederle gave to its vaccine. This insert stated, in pertinent part:

Paralytic disease following the ingestion of live polio virus vaccines has been reported in individuals receiving the vaccine, and in some instances, in persons who were in close contact with subjects who had been given live oral polio virus vaccine. Fortunately, such occurrences are rare, and it could not be definitely established that any such case was due to the vaccine strain and was not coinciden-

tal with infection due to naturally occurring poliomyelitis, or other enteroviruses. (Plaintiff's Exhibit 71; Exhibit Volume at 80–81).

The insert went on to remark that if there is any risk, it is no more than one case of vaccine-associated paralytic disease for every 3,000,000 or more doses. It is undisputed that Mrs. Givens received no warning from her pediatrician.

On February 2, 1973, the Givens' filed suit against Lederle alleging breach of certain duties and warranties of fitness and merchantability, and negligence in marketing. The first trial ended on June 18, 1974, when the jury returned a verdict for Lederle after deciding that the Givens' had not proved that the oral polio virus vaccine taken by Wendy Givens was the proximate cause of the polio that her mother, Sherry Givens, contracted.

Two days later, plaintiffs filed their Motion for New Trial contending, *inter alia,* that the district court erred in excluding Plaintiffs Exhibits Nos. 83 and 84, which allegedly prove that there have been previous cases of vaccine-induced polio. The trial court initially denied the motion, but later the judge reversed himself on the basis of *Reyes v. Wyeth Laboratories,* 498 F.2d 1264 (5 Cir. 1974), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974), which had just been handed down. The trial judge in his order notes that the Fifth Circuit in *Reyes* expressly accepted as a fact that oral polio vaccine can induce an active polio case. He concludes that in light of *Reyes,* his ruling precluded the jury from hearing evidence on this issue which was both material and relevant, and which was similar to evidence the *Reyes* court had admitted.

The second trial began on May 27, 1975, and ended on June 5, when the jury returned a verdict in favor of the Givens' and against Lederle, finding damages of $250,000 for Sherry Givens and $12,500 for her husband, Wendel. Both sides filed motions for new trials. The Givens' filed on the basis that Wendel's damages were unconscionably low, and are asking for a new

trial solely on the issue of damages. Lederle insists that the trial court erred in granting the motion for new trial; in not granting directed verdicts in both trials; in admitting the government documents in the second trial; and finally in awarding costs of the first trial to plaintiffs.

## I.

A. Lederle tries to distinguish *Reyes* from the instant case, hoping to prove that the trial judge erred in relying on it when he granted plaintiffs' motion for new trial. That attempt fails. Certainly the facts in the two cases are not 100% congruent, but they are reasonably close. The most striking difference is that the *Reyes* plaintiff actually ingested the live virus vaccination. This distinction is not significant, however, because appellant here does not deny that, as its "warning" admits, some persons in close contact with subjects vaccinated with live oral polio virus had developed paralytic diseases. Actually, appellant at trial also argued that no one could contract polio from the vaccine, in contravention (perhaps) of its own warning. But the issue here is, assuming *arguendo* that someone *could* contract polio from the vaccine, could it then be transported to someone in close contact. Testimony showed that a mother changing her baby's diapers would be particularly susceptible to contracting the disease. This was not a real issue for Lederle.

Another proposed major distinction is that a county health clinic administered the vaccine in *Reyes,* whereas a private pediatrician did so here. That distinction has more merit with regard to Lederle's second point—adequacy of warning—than to the first.[1] More importantly, the difference is not nearly so great as appellant indicates. The "county health clinic" in *Reyes* was not involved in the same sort of "mass inoculation" as was taking place in *Davis v. Wyeth Laboratories, Inc.,* 399 F.2d 121 (9 Cir. 1968), the case which established the duty to warn in these "unavoidably dangerous" drug cases, like *Reyes* and the instant one. The administration of the vaccine by a pub-

lic health nurse in *Reyes* is as close to the instant situation as it is to the *Davis* mass inoculation.

Lederle mistakenly stresses that in *Reyes* the jury expressly found that the vaccine caused the polio, whereas in the first trial of this cause the jury did not so find. The point is, however, that the trial judge, after reading *Reyes,* realized that the jury had no chance to properly consider that very issue because he had not allowed the plaintiffs to introduce evidence showing that the vaccine had caused other cases of polio. The failure to admit this evidence presumably convinced the jury that to find that the vaccine caused Sherry Givens' polio would be to announce for the first time that the vaccine could cause polio. Lederle had taken the unwavering position at trial, in contrast to its own warning, that no one prior to Mrs. Givens had ever contracted an active case of poliomyelitis from the vaccine. Dr. Albert Sabin himself, the creator of the oral vaccine, testified for Lederle that his vaccine could not cause polio.

▆▆▆ We cannot find an abuse of discretion in the granting of the motion for new trial. The trial judge knew which theories he had tried the case on the first time, and realized that *Reyes* indicated that it was wrong to exclude records of prior vaccine-induced polio cases. Florida law holds that it requires a much stronger showing to reverse the trial judge when he has granted a motion for new trial than when he has denied one. *E. g., Bailey v. Lloyd,* 62 So.2d 56 (Fla.1952). Appellant's reliance on *Massey v. Gulf Oil Corp.,* 508 F.2d 92 (5 Cir. 1975), *reh. denied,* 510 F.2d 1407, *cert. denied,* 423 U.S. 838, 96 S.Ct. 67, 46 L.Ed.2d 57, is misplaced. *Massey* holds that where a motion for new trial is granted on the ground that the verdict is against the great weight of the evidence, closer scrutiny is allowed than where the judge finds that an undesirable or pernicious influence has intruded into the case. In the former instance the judge is substituting his own opinion for the jury's, but that is not the

---

1. *See* discussion pp. 1345 to 1346, *infra.*

situation here. The trial judge found that he did not allow the jury to see the whole picture because of an erroneous understanding of the law on his part, which *Reyes* cleared up after trial.

B. Appellant insists that in both trials the trial court should have granted a directed verdict in its favor because the warning was not inadequate and the failure to warn, if any, was not a proximate cause of Mrs. Givens' disease. Plaintiffs' case hinges on the warning. As *Reyes* and *Davis* found, the Sabin oral vaccine is an "unavoidably dangerous" product. A plaintiff cannot recover simply because he shows that he was harmed by something dangerous necessarily contained in the product, such as a live polio virus in oral vaccine. There is no claim in the instant case that the vaccine given was not what it was supposed to be. The Ninth Circuit in *Davis* stated that the trial court should have instructed that a manufacturer is liable if he knows that the product may harm some users but does not adequately warn of that risk. *Davis* holds that when a manufacturer knows or should know that the drug will be used without prescription, as in a mass inoculation, he has a duty to warn each individual consumer.

■ When a private doctor administers a drug by prescription, however, it is defective as marketed only if the manufacturer does not warn the doctor about any hazard known. There is solid evidence that the vaccine was administered here in a manner more like that at a small county health clinic, as in *Reyes*, than by prescription. For example, Dr. LaRue, the private pediatrician, testified that the administration in his office "really doesn't differ" from that of the Public Health Center; "not in the administration at all." (App. 2161–62). If so, then Lederle is responsible for taking definite steps to get the warning directly to the consumer.

Even if we were to assume the opposite, *i. e.*, that the administration here was really like that of a prescription drug, there still was enough evidence to sustain the jury verdict. Appellant maintains that there is "no evidence whatsoever" showing that the warning given to the doctor did not adequately state the risk. It was appellant's counsel, however, who brought that very evidence out when he cross-examined Dr. LaRue.[2] Dr. LaRue claims that "the wording of the inserts states that it is a safe and affective [sic] means of immunizing the population and that the risk, if its exists, is no more than one in three million. I felt this was a very nebulous way of putting it, . . . and I did not feel there was sufficient evidence or warning to warn Mrs. Givens about this." (App. 2176–77).

■ We refuse to overturn the jury's verdict on these two questions—failure to give adequate warning, and that failure being a proximate cause—since there is a rational basis for their determination. The jury could easily have concluded, after hearing the warning and Dr. LaRue's testimony, that the warning did not sufficiently point out the possibility that the live vaccine could cause polio. The warning stated, "Fortunately, such occurrences are rare, and it could *not be definitely established* that *any* such case was due to the vaccine strain and was not coincidental with infection due to naturally occurring poliomyelitis or other enteroviruses . . . [authorities] estimate the risk, if it exists, to be no more than [one in 3 million]" (our emphasis). Thus, as Dr. LaRue testified, the "warning" could leave the distinct impression that not a single case of vaccine-induced polio had actually occurred and that there may be no risk at all.

Further, the jury could have decided that had plaintiff known of the risk involved, she would not have allowed Dr. LaRue to immunize her infant daughter with the live

---

2. At this point and throughout the trial, counsel was trying to elicit testimony that there is no such thing as vaccine-induced polio. Thus, for example, he asked Dr. LaRue, "You mean you didn't feel that this could possibly happen so you didn't warn her?" (App. 2177). So Lederle argues both that vaccine-induced polio does not exist, and that the warning was adequate because it stated that if there was a risk it was no more than one case of vaccine-related paralytic disease for every 3,000,000 doses.

polio virus vaccine at that time. Instead, she might have waited until she (Mrs. Givens) had been vaccinated; or until Wendy was older; or until the Salk vaccine (which does not use live polio virus) was available. Indeed, it is conceivable that Mrs. Givens would have decided, albeit perhaps unwisely, to refuse vaccination of any family member. The failure to impress upon the private physician the real risk involved in using a live virus thus became a cause of Mrs. Givens' paralytic disease.

■ C. Appellant protests the admission of a government document in the second trial that the court excluded in the first, plus one other document that contains the same information for a later year. The two documents protested are Plaintiffs Exhibits 83 and 91, the 1971 and 1972 *Annual Poliomyelitis Summary,* prepared by the Center for Disease Control in Atlanta. Appellant claims that these reports contain inadmissible hearsay: the record of other vaccine-induced polio cases. Another alleged reason for exclusion is that the Center did not publish them until after the plaintiff's daughter received the vaccine.

Plaintiffs could easily have abused the use of these documents in trial. The trial judge, however, prevented any possibility of this by carefully instructing the jury that he was not admitting the documents to show that Sherry Givens had contracted polio from the vaccine, nor to show that Lederle knew of vaccine-induced polio. Rather, the jury was to consider the documents only for the limited issue of whether the medical profession recognized that vaccine-induced polio occurs. The admission of these documents was fair rebuttal to Lederle's evidence that the vaccine had never caused polio. The *Reyes* court admitted similar documents. Further, the editor of these reports, Dr. Michael Gregg, was present in the courtroom, identified the documents, and was subject to cross-examination. Thus, we also find them admissible pursuant to Rule 803(8), Fed.Rules of Evid., as public records.

■ D. Finally, appellant complains that the award of costs to plaintiffs in the first case was an error. The court granted the motion for new trial through no fault of defendant. Plaintiffs are the ultimate prevailing party, however, and it was not an abuse of discretion to award them the costs of the first trial. Courts normally award costs to the prevailing party "as of course." Rule 54(d), Fed.R.Civ.P.

II.

■ In the cross appeal, plaintiffs protest solely the verdict for Mr. Wendel Givens, husband of the polio victim, in the amount of $12,500. We recognize that the appropriate standard for reviewing a jury's measure of damages requires us to abide by their determination in the absence of a clear abuse of discretion. *See, e. g., Ward v. Buehler,* 472 F.2d 1170 (5 Cir. 1973); *Radiant Oil Co. v. Herring,* 146 Fla. 154, 200 So. 376 (1941). Yet we agree with plaintiffs that the measure here indicates that the jury failed to take into account trial court instructions that Mr. Givens can obtain damages for the lifetime loss of his wife's services, comfort, society and attention. Consequently, we hold that Mr. Givens' damages were inadequate, and grant him a new trial solely on the issue of damages. *See, e. g., Vidrine v. Kansas City Southern Ry. Co.,* 466 F.2d 1217 (5 Cir. 1971); *Griffis v. Hill,* 230 So.2d 143 (Fla. 1970); *Stahlheber v. American Cyanamid Co.,* 451 S.W.2d 48 (Mo.1970) (similar facts to instant case).

AFFIRMED in part, REVERSED in part, and REMANDED for new trial on issue of Wendel Givens' damages.