**Deborah D. TIMM and Robert H. Timm, Jr., husband and wife, Plaintiffs-Appellees,**

v.

**The UPJOHN COMPANY, Defendant-Appellant.**

**No. 78–2476.**

United States Court of Appeals, Fifth Circuit.

Aug. 18, 1980.

Rehearing Denied Oct. 6, 1980.

Adams & Reese, Henry B. Alsobrook, Jr., Robert D. Bjork, Jr., New Orleans, La., for defendant-appellant.

R. Ray Orrill, Jr., New Orleans, La., Kenneth M. Henke, Lafayette, La., for plaintiffs-appellees.

Before BROWN, AINSWORTH and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

The plaintiffs, Deborah and Robert Timm, filed this diversity action in the district court for personal injuries to Deborah Timm, and consequential damages from those injuries, allegedly caused by her use of defendant The Upjohn Company's drug *Cleocin*.[1] A jury in the United States District Court for the Eastern District of Louisiana found Upjohn negligent in its marketing of *Cleocin*; it further found that the negligence was a proximate cause of Deborah Timm's injuries. Deborah Timm's damages were set at $195,000 and her husband Robert's damages were set at $115,000. At the close of plaintiffs' case and at the close of all the evidence, Upjohn moved for a directed verdict. Those motions were denied. Judgment was entered on the verdict. Upjohn timely moved for judgment notwithstanding the verdict or alternatively for a new trial. These motions were denied.

On appeal, Upjohn raises several objections to the proceedings below: (1) that the district court should have granted its motions since all the evidence was to the effect

---

1. *Cleocin* is the trade name for the antibiotic drug clindamycin.

that The Upjohn Company's warnings contained in the package insert and published in the *Physician's Desk Reference* [PDR] adequately warned the medical profession about the possibility of acute colitis [2] occurring in association with *Cleocin* therapy, and no evidence to the contrary was presented; (2) that its motions were proper since all the testimony was to the effect that prior to prescribing *Cleocin* for Mrs. Timm, Dr. Harold Tabb, the prescribing physician, was aware that colitis and even colectomy could result from *Cleocin* therapy, especially since Dr. Tabb's credibility was never put at issue; (3) that the district court committed reversible error when it failed to allow into evidence, as an exception to the Hearsay Rule, the medical report and opinion made by Dr. Basil C. Morson, an expert in colon pathology, and when it allowed into evidence documents pertaining to the drug *Lincocin* [3]; and (4) that the jury charge given by the district judge was misleading. We have considered all of the points raised by Upjohn and find no reversible error. Accordingly, we affirm.

In March 1974, Deborah Timm sought relief from a condition called sinusitis [4] for which Dr. Harold Tabb prescribed the antibiotic *Cleocin*. Mrs. Timm used the drug as directed and shortly after discontinuing its use, she developed severe pseudomembranous colitis [5] that worsened to toxic megacolon. Eventually her colon had to be surgically removed and she required two further operations as a result of the original surgery. Causation is not at issue in this appeal and it is clear from the record that Mrs. Timm did not have colitis prior to her use of *Cleocin*.

It has been established that, in the case of prescription drugs such as *Cleocin*, the manufacturer has no obligation to warn a consumer of that drug so long as the prescribing physician has been adequately warned of any potentially adverse side effects. *Givens v. Lederle*, 556 F.2d 1341, 1345 (5th Cir. 1977); *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1276 (5th Cir. 1974); *Davis v. Wyeth Laboratories*, 399 F.2d 121, 130 (9th Cir. 1968); *cf. Heirs of Fruge v. Blood Services*, 365 F.Supp. 1344, 1350 (W.D.La.1973), *modified on other grounds*, 506 F.2d 841 (5th Cir. 1975). The prescribing physician acts as a "learned intermediary" between the manufacturer and the consumer, since he is in the best position to weigh the benefits against the risks of a particular drug therapy. *Reyes v. Wyeth Laboratories, supra*, 498 F.2d at 1276; *see* Merrill, Compensating for Prescription Drug Injuries, 59 Va.L.R. 1, 91 (1973). Upjohn asserts that its warning [6] of "acute colitis" was adequate to notify Dr. Tabb of the potentially dangerous side effects of *Cleocin* ; similarly, plaintiffs conceded in oral argument that, if the warning was adequate, the action would more properly lie against the prescribing physician.[7]

Upjohn's major claim on appeal is that the evidence concerning Dr. Tabb's awareness of the hazards of *Cleocin* was uncontroverted and thus the evidence as to Upjohn's liability was insufficient as a matter of law to generate a question for the jury. Defendant argues that Dr. Tabb unequivocally stated in his testimony that he knew that a colectomy and the more severe

---

**2.** Colitis, which is sometimes called colonitis, is an inflammation of the mucous membrane of the colon.

**3.** *Lincocin* is the trade name for the drug lincomycin, a chemical analog to clindamycin.

**4.** Sinusitis is an inflammation of the sinus membrane and can cause hoarseness and a sore throat.

**5.** Chronic ulceration in the colon.

**6.** The warning in the PDR stated:

"WARNINGS
The following reactions have been reported with the use of clindamycin.
CASES OF SEVERE AND PERSISTENT DIARRHEA HAVE BEEN REPORTED AND HAVE AT TIMES NECESSITATED DISCONTINUANCE OF THE DRUG. THIS DIARRHEA HAS BEEN OCCASIONALLY ASSOCIATED WITH BLOOD AND MUCUS IN THE STOOLS AND HAS AT TIMES RESULTED IN ACUTE COLITIS."

**7.** Dr. Tabb is not a party to this suit.

forms of colitis could result from the use of *Cleocin.* We disagree.[8]

The standard of review for questions concerning sufficiency of the evidence is well settled in this Circuit. *Givens v. Lederle, supra,* 556 F.2d at 1345; *Reyes v. Wyeth Laboratories, supra,* 498 F.2d at 1288; *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969).

In light of the *Boeing* standard, we hold that a rational basis for the jury's verdict exists since the evidence regarding the adequacy of Upjohn's warning to Dr. Tabb was sufficient to create a question for the jury. The jury was entitled to weigh the conflicting statements made by Dr. Tabb and the other physicians along with all the other evidence presented in the case. *Bauman v. Centex Corp.,* 611 F.2d 1115, 1117 (5th Cir. 1980); *Accord: Ezagui v. Dow Chemical Corp.,* 598 F.2d 727 (2d Cir. 1979).

Upjohn's contentions that the trial court made certain erroneous evidentiary rulings and that the trial judge's charge to the jury was misleading are without merit. In the evidentiary rulings complained of, the lower court acted well within its discretion. *See Givens v. Lederle, supra,* 556 F.2d at 1346; *Kershaw v. Sterling Drug., Inc.,* 415 F.2d 1009, 1011 (5th Cir. 1969); *cf. Bryan v. John Bean Division of FMC Corp.,* 566 F.2d 541, 545 (5th Cir. 1978). In reviewing the trial judge's instructions to the jury, we consider the charge as a whole to determine whether the jury was misled and whether it understood the issues presented. *Couglin v. Capitol Cement Co.,* 571 F.2d 290, 300 (5th Cir. 1978); *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076, 1100 (5th Cir. 1973). Under this standard we

find no error. *Reyes v. Wyeth Laboratories, supra,* 498 F.2d at 1292.

AFFIRMED.

---

**8.** From any view, Dr. Tabb's testimony regarding his awareness of the potentially dangerous side effects is certainly not unequivocal; at best it is confused. For example, on direct examination (and in his deposition) Dr. Tabb stated that he relied on the package insert and the warning in the PDR to give him full and complete information as to the side effects of *Cleocin.* Trial Transcript, Vol. X at 195; Record, Vol. I at 241, 244. Further, he testified in response to a hypothetical that had he known of the types of adverse reactions (ulcerative colitis, toxic megacolon, fatalities and 10% incidence of pseudomembranous colitis) he probably would not have prescribed *Cleocin* for plaintiff. Trial Transcript, Vol. X at 200. On cross-examination he testified that at the time he prescribed *Cleocin* he was aware that a colectomy could result from using it. Trial Transcript, Vol. X at 205. But on re-direct Dr. Tabb stated that he first became aware that a colectomy could result from using *Cleocin* when plaintiff's lawyer informed him of her condition. Trial Transcript, Vol. X at 214.