**O.L. MAULDIN, Plaintiff-Appellee,**

v.

**The UPJOHN COMPANY, Defendant-Appellant.**

No. 81–3209.

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1983.

Rehearing and Rehearing En Banc Denied April 18, 1983.

Henry B. Alsobrook, Jr., Robert D. Bjork, Jr., New Orleans, La., for defendant-appellant.

Francipane, Regan & St. Pee, Philippi P. St. Pee, Metairie, La., for plaintiff-appellee.

Before GARZA, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

In this product liability diversity case, the Upjohn Company, manufacturer of the antibiotics Lincocin and Cleocin,[1] appeals an adverse verdict in favor of plaintiff O.L. Mauldin, contending that: (1) Mauldin failed to establish a causal link between the drugs and his condition, (2) Mauldin failed to establish the inadequacy of the manufacturer's warnings, (3) the trial judge ruled erroneously on evidentiary matters, and (4) the judge erred in her jury charge. Finding no reversible error, we affirm.

*Facts*

Mauldin severely injured his hand in March 1974 while working on a lake barge. He was treated by Dr. Herman E. Walker, Jr., who prescribed Lincocin as a guard against infection. When Dr. Walker released Mauldin from the hospital, he prescribed Cleocin as a continuing prophylaxis against infection. Mauldin was scheduled for a follow-up examination in three weeks.

Shortly after leaving the hospital, Mauldin began to suffer from a tenacious bout of diarrhea. He was treated by several physicians, one of whom prescribed the drug Lomotil, but his condition worsened and he was readmitted to the hospital. Mauldin's physical condition continued to deteriorate, and he was ultimately subjected to multiple and extensive surgical procedures made necessary by ulcerative colitis. The period of hospitalization exceeded two months.

This tort action began in state court, was removed to federal court and initially ended in a mistrial. On retrial the jury returned a

---

1. Lincocin and Cleocin are Upjohn's trade names for lincomycin and clindamycin HC1, respectively.

verdict for $570,000, grounding liability on a finding that Upjohn had failed to warn adequately of the risk of pseudomembranous colitis posed by the two drugs. The instant appeal follows the denial of the motion for judgment n.o.v. or new trial.

### Causation

■ Upjohn challenges causation on two grounds. It first contends that Mauldin failed to offer any direct medical evidence that either Lincocin or Cleocin probably caused his colitis. In response we note that failure to produce direct medical evidence is not fatal, for as we observed in *Porter v. American Optical Corp.,* 641 F.2d 1128, 1142 (5th Cir.1981), a products liability case involving Louisiana law, "The plaintiff's burden is to prove causation by a preponderance of the evidence, which may be met by direct or circumstantial evidence." In a case of circumstantial evidence, Upjohn maintains that Mauldin must exclude all other reasonable hypotheses of causation if he is to prevail based on such evidence. We disagree. Mauldin does not bear that onerous burden; his "evidence need not negate all other possible causes." *Id.* (*citing Weber v. Fidelity & Casualty Ins. Co. of New York,* 259 La. 599, 250 So.2d 754 (1971), and *Jordan v. Travelers Ins. Co.,* 257 La. 995, 245 So.2d 151 (1971)). The record contains circumstantial evidence that either

Lincocin or Cleocin caused Mauldin's disorder sufficient to require submission of that question to the jury.

Upjohn's second challenge to causation relates to the warnings. Essentially, Mauldin complained that the warnings[2] on the package inserts did not adequately inform his physician of possible adverse reactions to the two antibiotics. Because of this failure, Mauldin contended that Upjohn is liable for the damages caused by his adverse reaction to the drugs.

In its defense to these contentions, Upjohn refers to the testimony of Dr. Walker, the prescribing physician, which indicates that he would have prescribed the medications, despite stronger warnings, because of the danger of infection and the reputation of the drugs. Upjohn argues that Dr. Walker's testimony establishes that any failure on its part to warn adequately of potential side effects of the medications was not causally related to the later tragic events.[3] Upjohn maintains that Dr. Walker's testimony severs the causal chain.

This argument is appealing but not compelling for Dr. Walker also testified that the regimen he would have followed would have differed if he had been made aware of the severity of the side effects and of the suggested treatment of the induced diarrhea.[4]

2. The following information was recited under the heading "Adverse Reactions":
   Gastrointestinal: Abdominal pain, nausea, vomiting and diarrhea or loose stools may occur. Cases of severe diarrhea associated with blood and mucus in the stools have been reported.
   Additionally, the following warning was stated in the package insert and was published in the *Physician's Desk Reference (PDR):*
   WARNINGS
   The following reactions have been reported with the use of clindamycin [Cleocin].
   CASES OF SEVERE AND PERSISTENT DIARRHEA HAVE BEEN REPORTED AND HAVE AT TIMES NECESSITATED DISCONTINUANCE OF THE DRUG. THIS DIARRHEA HAS BEEN OCCASIONALLY ASSOCIATED WITH BLOOD AND MUCUS IN THE STOOLS AND HAS AT TIMES RESULTED IN ACUTE COLITIS.

3. We note the following colloquy between counsel for Upjohn and Dr. Walker:

Q. And with regard to—Doctor, I am going to ask you this: You said that you didn't know about pseudomembranous colitis at the time, but even if you had known about it, knowing that the Cleocin was the best drug on the market to give Mr. Mauldin, you would have given it to him, anyway, wouldn't you?
A. I probably would have at the time because there was really no adequate substitute to use.

4. Dr. Walker testified on cross-examination:
Q. Dr. Walker, you said you might have given the drug Cleocin anyway. But I am asking you if you would have given the drug Cleocin anyway, you would have given the drug under the belief that you knew what its side effects were, is that correct?
A. Yes sir.
Q. And if you knew that a side effect of a particular drug which you may give to your patient could cause the onset of a certain

■ The manufacturer of a prescription drug is not obliged to warn each consumer of the dangers inherent in the use of its product if the prescribing physician receives adequate warnings of the potential adverse effects. *See Givens v. Lederle,* 556 F.2d 1341 (5th Cir.1977); *Reyes v. Wyeth Laboratories,* 498 F.2d 1264 (5th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974). Upjohn contends that its warning, *see* note 2, was sufficient to alert Dr. Walker of the potentially dangerous side effects of Cleocin and Lincocin. Although the contention has force, we are not convinced that it must be accepted as a matter of law. Rather, in the factual panorama presented by this case, the contention poses a jury question.

In *Timm v. Upjohn Co.,* 624 F.2d 536, 539 (5th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1981), a case also involving Cleocin, we concluded that in deciding whether the identical warning was sufficient, "The jury was entitled to weigh the conflicting statements made by [the prescribing doctor] and the other physicians along with all the other evidence presented in the case." The instant case poses the same question. The jury heard and was called upon to evaluate Dr. Walker's testimony as to what he understood the warnings to be and how he might have acted differently if he had been warned or advised differently. In addition to the testimony that he probably would have prescribed the drugs regardless of the more detailed warning, there is further testimony about potential monitoring and cautionary advice to Mauldin and the impact of the failure to list any remedies or antidotes for adverse reactions. The evidence presented dictates neither an affirmative nor a negative answer to the inquiry whether Dr. Walker would have acted differently if the warnings had been different. Instead, the evidence presents the classic question for the trier of fact—in this instance the jury.

### Inadequate Warnings

■ To establish his challenge to the inadequacy of the warnings for Lincocin and Cleocin in the package inserts and in *Physician's Desk Reference,* Mauldin offered the testimony of Dr. Walker as well as that of Dr. Gordon McHardy, an internist specializing in gastroenterology. Dr. McHardy was of the opinion that the Upjohn warning did not notify the practicing physician of the danger of pseudomembranous colitis as a possible adverse reaction to the use of Cleocin or Lincocin nor advise of any method of treatment for complications arising from the use of the drugs. Although Upjohn considered Lomotil to be contraindicated in the treatment of Cleocin diarrhea, its warning did not so advise. Dr. McHardy spoke of the imperative that doctors be "ade-

sign of symptoms of that disease, would you not yourself be more alert for the onset of those signs, and at the same time advise your patient to be more alert for the onset of those signs and symptoms of this particular adverse reaction?

A. Yes, sir, usually so. If you could expect something to happen, but on the other hand, I may not have told him all of the side effects.

You know, sometimes I do, sometimes I don't.

Q. But if you are concerned about a particular side effect or if you know about a particular side effect and your patient walks back into your office a couple days later or a couple weeks later and says, Doctor, I am in this condition, and he describes his condition to you, and then you know that the condition he has been describing is the onset of a particular side effect. You would then know how to treat your patient to avoid a more debilitating, progressively debilitating type of condition, is that correct?

A. Yes, Sir.

Q. Now—

A. Usually you do, if there is a treatment for it.

Q. That's part of the thing you want to do for your patient, it's not only to fix his thumb, but it is also to make certain in fixing his thumb he returns to good and full health rather than being started on a chain of downward health?

A. Of course. You want to treat the whole patient, not just the thumb.

Q. You mentioned one of the things that you considered in the package insert was the antidote, is that correct, the treatment or—

A. Well, I was saying that sometimes they will list an antidote for a drug. There is no antidote listed for Cleocin.

quately advised as to the side effects of drugs" which they prescribe. Dr. Walker concurred.

Upjohn counters with the testimony of Dr. Francis Tedesco, an expert in the drafting of warnings such as those here involved. At trial, Dr. Tedesco attested to the adequacy of the warnings. Upjohn insists that only an expert in the preparation or construction of medical product warning statements can testify properly as to the issue of adequacy. We cannot accept this argument, for it belies the essential purpose of the warning. Package inserts and *PDR* references are not written for medical experts schooled and skilled in the writing of warnings. They are written to inform fully and adequately the medical practitioner who is called upon—occasionally importuned—to prescribe the medication. The understanding and perception of the Dr. Walkers and Dr. McHardys is entirely relevant, for the sufficiency of the warning is dependent upon their reasonably anticipated comprehension. The record contains sufficient evidence to support the jury's finding that the warnings were inadequate.

## Evidentiary Rulings

■ Upjohn questions the admission into evidence of certain "adverse reactions" reports,[5] offered to establish Upjohn's awareness of the problems associated with use of the subject drugs. Since many of the reports detailed complications other than pseudomembranous colitis, thereby going beyond the issue in this case, Upjohn argues that the probative value of the reports was outweighed by their prejudicial nature, adversely affecting the jury.[6]

Our review of the record leads us to conclude that while Mauldin's counsel should not have been permitted to dwell on the reports, the trial judge's limiting instruction[7] prevented the type of possible jury confusion criticized by the Supreme Court in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

■ Upjohn also attacks, on grounds of authentication, the admission of photographs made by pathologist Francis M. Patton displaying slides of colon tissue. Dr. Patton prepared the slides from paraffin blocks furnished by another pathologist. On cross-examination, Dr. Patton candidly conceded that he could not attest "with absolute certainty" that the paraffin blocks contained tissue taken from Mauldin. Dr. Patton did testify, however, that the numbers on the pathology reports identified as Mauldin's were identical to the numbers on the paraffin blocks identified as Mauldin's, and that he observed nothing to indicate a mix-up. Dr. Patton expressed no doubt as to the match itself. The Federal Rules of Evidence do not require absolute certainty in authentication, but rather "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). This measure is met; the photographs were properly admitted.

## Jury Instructions

■ Upjohn questions the trial judge's statement that "the Upjohn Company failed to timely advise physicians as to the proper method of treating adverse reactions to these drugs" and her reference to "ulcerative-like pseudomembranous colitis." We accept, *arguendo,* the substantive validity of the challenges to this statement and reference. Having done so, we examine the entire jury charge. "In reviewing the trial judge's instructions to the jury, we consider the charge as a whole to determine whether the jury was misled and whether it understood the issues presented." *Timm v. Up-*

---

5. The "adverse reaction" reports are completed by a physician or hospital personnel and forwarded to the drug manufacturer, informing the manufacturer that a patient has suffered from a reaction of side effects which is not detailed on the package insert.

6. Upjohn also objected to the admission of the reports on hearsay grounds. Hearsay is not implicated, however, since the reports were not offered to prove the truth of their contents. *See* Fed.R.Evid. 801(c).

7. The trial judge instructed the jury that these reports could be considered solely on the issue of notice; they were not to be considered for the truth of their contents.

*john Co.,* 624 F.2d at 539 (*citing Coughlin v. Capitol Cement Co.,* 571 F.2d 290 (5th Cir. 1978), and *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076 (5th Cir.1973)). Assessed in the light of this rubric, the judge's instructions pass muster, since the charge as a whole makes clear that it was the jury's province to determine the facts, including the adequacy of Upjohn's notice procedures.

■ Upjohn's final assignment of error requires little discussion. Upjohn contends that Mauldin's testimony, by touching on his practice of attending church and his belief in "almighty God," violated Fed.R. Evid. 610 and was unduly prejudicial. This argument is without merit. The record reveals that Mauldin was not attempting to bolster his credibility through his statements of religious belief but simply was testifying to the hardships imposed upon him, in his efforts to attend church, because of his present condition.

AFFIRMED.