468 So.2d 714 (1985)
Larry E. KINNEY
v.
Wanda HUTCHINSON, et al.
No. 84-CA-583.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 1985.
Writ Denied June 17, 1985.
*715 Charles G. Smith and Wayne W. Yuspeh, Metairie, for Larry E. Kinney, plaintiff-appellant.
Stewart E. Niles, Jr. and Donna G. Klein, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Boehringer Ingelheim, Ltd., defendant-appellee.
Before BOUTALL, BOWES and GAUDIN, JJ.
BOUTALL, Judge.
This case arises from a summary judgment dismissing the plaintiff's suit against a defendant drug manufacturer. The plaintiff appeals.
Larry E. Kinney, the plaintiff, was shot in the throat by Wanda Hutchinson, a total stranger to him, at the Everybody's Here Too Lounge. Allegedly Hutchinson was under the influence of a combination of the drug Preludin, an appetite suppressant, and alcohol when the shooting occurred. Kinney sued Hutchinson and other defendants, including Boehringer Ingelheim, Ltd., manufacturer of Preludin. On April 9, 1984, another panel of this court affirmed a motion for summary judgment dismissing Kinney's suit against Walgreen Louisiana Company, d/b/a Walgreen's Drug Stores, *716 which filled the prescription for Preludin.[1] The suit against the defendants Hutchinson and Bankers Standard Insurance Company was dismissed, having been compromised. On July 26, 1984, the trial court granted summary judgment, dismissing the plaintiff's suit against Boehringer Ingelheim, Ltd. From that judgment the plaintiff has taken this appeal. We affirm.
The issues raised by the appellant are 1) whether there are genuine issues of fact; 2) whether the defendant proved adequate warning to the physicians in this case; 3) whether the defendant proved its product was not unreasonably dangerous; and 4) whether the prescribing physician was the agent of Boehringer.
The applicable law regarding summary judgment appears in Williams v. Airport Appliance & Floor Covering, 445 So.2d 764 (La.App. 2nd Cir.1984), writs denied 447 So.2d 1070 and 447 So.2d 1071 (La. 1984), at 770, as follows:
"C.C.P. Article 966 provides that a motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.
"Only when reasonable minds must inevitably concur, as a matter of law, on the facts before the court is a summary judgment warranted. Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976). The burden of showing that there is not a genuine issue of material fact in dispute is upon the mover for summary judgment. Any doubt is resolved against the granting of a summary judgment and in favor of a trial on the merits. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Clement v. Taylor, 382 So.2d 231 (La.App. 3rd Cir. 1980); Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980)."
Boehringer submitted with its motion for summary judgment the affidavit of Robert Munies, the Director of Drug Regulatory Affairs of Boehringer Ingelheim, Ltd., and a package insert for Preludin that was included in all sales of the drug. The affidavit attests to the following: that Boehringer was regulated by the Food & Drug Administration and the Food, Drug, & Cosmetic Act, 22 U.S.C. Section 301, et seq., with respect to the testing, promulgating, advertising, marketing, and sale of Preludin; that it had complied with all regulations, mandates, edicts, and suggestions of the FDA regarding the manufacture and/or marketing of the drug; and that Boehringer was advised by the FDA as to the specific warnings to be used on the package warnings. The package insert (copy attached) includes the following information as to risk factors:
"Contraindications ... Agitated state. Patients with a history of drug abuse. Concomitant use of CNS stimulants..."
"Warnings ...
"Preludin ... may impair the ability of the patient to engage in potentially hazardous activities such as operating machinery or driving a motor vehicle; the patient should therefore be cautioned accordingly."
"Adverse Reactions ...
"Central Nervous System: Overstimulation, restlessness, dizziness, insomnia, euphoria, dysphoria, tremor, headache; rarely psychotic episodes at recommended doses."
Under "Drug Dependence" the label warns that Preludin is related chemically and pharmacologically to the amphetamines. The physician should bear in mind that amphetamines are widely abused, with serious psychological results. The warnings go on to list the manifestations of chronic intoxication with anorectic drugs, including "personality changes." The insert states that:

*717 "... The most severe manifestation of chronic intoxication is psychosis, often clinically indistinguishable from schizophrenia."
The following information regarding overdosage is supplied:
"Overdosage Manifestations of acute overdosage with phenmetrazine hydrochloride include restlessness, tremor, hyperreflexia, rapid respiration, confusion, assaultiveness, hallucinations, panic states. Fatigue and depression usually follow the central stimulation."
The defendant's memorandum in support of summary judgment refers to specific statements from the deposition of Dr. Thomas O'Quinn, the prescribing physician, regarding his experience with the drug and his awareness of its possible side effects and risks.
In opposition to summary judgment the plaintiff submitted no affidavits, although he referred in his memorandum to statements in Dr. O'Quinn's deposition and in that of Ms. Hutchinson. He also filed copies of the package insert and of the case of Sanderson v. Upjohn Co., 578 F.Supp. 338 (D.Mass.1984).
Despite the heavy burden placed on the mover for summary judgment to show that there is not a genuine issue of material fact in dispute, the law imposes certain requirements upon the opposing party. La.C.C.P. art. 967 reads as follows, in pertinent part:
"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
"When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him." [Emphasis supplied.]
The plaintiff based his opposition to summary judgment on two theories: that Boehringer was negligent in failing to give adequate warning of risks inherent in Preludin and that Boehringer was strictly liable because Preludin is an unreasonably dangerous drug.
At the outset, we point out that in order to prove fault under either theory the plaintiff must prove that the product was a cause of his harm. Kinney has set forth no facts which show any connexity between Ms. Hutchinson's taking a tablet of Preludin and his gunshot wounds. Ms. Hutchinson stated in her deposition that she did not remember anything about the episode except taking a Preludin tablet in the afternoon, going to the bar with friends, and having some drinks. She was hospitalized in a psychiatric ward afterward for an unspecified period of time.
The manufacturer's duty is stated in Cobb v. Syntex Laboratories, Inc., 444 So.2d 203 (La.App. 1st Cir.1983), at 205:
"The manufacturer of a prescription drug has the obligation to inform the prescribing physician of any potentially adverse side effects or risks from the drug's use...."
"The manufacturer has no duty to warn the consumer directly of any risks or contraindications associated with the drug. The manufacturer of the drug has fulfilled its obligation when it has informed the prescribing and treating physicians of the risks of harm from the drug so that they may intelligently decide on its use and advise the patient. Stanback v. Parke, Davis and Company, 657 F.2d 642 (4th Cir.1981). The doctor acts as an informed intermediary. The decision to use the drug in a particular circumstance rests with the doctor *718 and the patient, not with the manufacturer."
Accord, Timm v. Upjohn Co., 624 F.2d 536 (5th Cir., 1980); Brochu v. Ortho Pharmaceutical Corp., 642 F.2d 652 (1st Cir.1981).
The package insert and the Physician's Desk Reference (PDR) manual contain identical material, as excerpted above. The possibility of a psychotic episode at recommended dosage is listed among adverse reactions. The information also clearly warns of adverse psychological reactions to overdosage, including assaultiveness, hallucinations, and panic state. While there is no specific warning as to adverse results from using alcohol concurrently with Preludin, the plaintiff has not submitted any documentary evidence suggesting possible adverse effects from the combination. All new drugs must be approved by the FDA, as outlined in 21 U.S.C. 355. The manufacturer is required to warn of all known risks at the time of publication of the package inserts and PDR information and to update its warnings to reflect new research findings. Cobb v. Syntex Laboratories, Inc., supra.
The plaintiff's argument that the defendant did not prove the drug Preludin was not an unreasonably dangerous drug is again a question of the adequacy of the warnings. The issue was considered in depth in Reyes v. Wyeth Laboratories, 498 F.2d 1264 (5th Cir.1974), a case involving the trivalent live-virus Sabin oral polio vaccine. There the court said, at 1273, 1274:
"[T]he applicable standard, as formulated in the Restatement, is as follows: In terms of the user's interests, a product is `unreasonably dangerous' only when it is `dangerous to an extent beyond that contemplated by the ordinary consumer'; or, to phrase it in terms of the seller's responsibility, `so dangerous that a reasonable man would not sell the product if he knew the risk involved'." [Citations omitted.]
The court found that the vaccine was not "unreasonably dangerous per se" but could be "unreasonably dangerous as marketed," and said, at 1274, 1275:
"... As comment k to Section 402A instructs, an unavoidably unsafe product is neither defective nor unreasonably dangerous if such a product is `properly prepared, and is accompanied by proper directions and warning'. Consequently, the statement requires a seller who has reason to believe that danger may result from a particular use of his product to provide adequate warning of the danger in order that the product's potential for harm may be reduced. Failure to give such a warning when it is required will itself present a `defect' in the product and will, without more, cause the product to be `unreasonably dangerous as marketed'."
In Miller v. The Upjohn Company, et al, 465 So.2d 42 (La.App. 1st Cir.1985), the court said, at page 45:
"... Although strict liability in products liability cases exists in normal circumstances independent of a finding of negligence, DeBattista v. Argonaut-Southwest Ins. Co., supra [403 So.2d 26 (La. 1981)], it is at the point of warning of drug side effects that negligence and strict liability become one and identical. Feldman v. Lederle Laboratories, 97 N.J. 429, 479 A.2d 374 (1984)."
We believe that the warnings, as issued by Boehringer, are sufficient to put the physician on notice that the drug Preludin carries the possibility of psychosis under normal dosage and of "confusion, assaultiveness, hallucinations, panic states" with overdosages. As no evidence has been submitted to suggest that combining Preludin with alcohol causes other side effects, we consider that the information provided reflects the state of medical knowledge at the time the warnings were issued. We note that no additional warnings are listed for Preludin in the current PDR.
We find no authority for the appellant's suggestion that Dr. O'Quinn is an agent of Boehringer, and the appellant's authority is not persuasive. In Harepour v. A.C. Collins Ford of New Orleans, 363 So.2d 1261 (La.App. 4th Cir.1978), cited by the appellant, an auto agency was found to have *719 clothed a salesman with apparent authority and was liable for his wrongdoing. Although the prescribing physician has been described frequently as the "learned intermediary" between the manufacturer and consumer, he is not given apparent authority to act on behalf of the drug manufacturer.
Accordingly, for the reasons stated above, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] Kinney v. Hutchinson, 449 So.2d 696 (La.App. 5th Cir.1984), writ not considered, 452 So.2d 170 (La.1984).