Linda McPHERON, etc., et al., Plaintiffs,

Linda McPheron Hodges, Plaintiff–Appellant,

v.

SEARLE LABORATORIES, INC., et al., Defendants–Appellees.

Linda McPheron HODGES, Plaintiff–Appellant,

v.

Edgardo LEONIDAS, Defendant,

Parkash K. Sehdeva, et al., Defendants–Appellees.

No. 88–3611.

United States Court of Appeals, Fifth Circuit.

Nov. 14, 1989.

Russell L. Dornier, Gary, Field, Landry & Dornier, Baton Rouge, La., for plaintiff-appellant.

1. Ms. McPheron is now known as Linda Hodges.

2. The Searle Laboratories Division of Searle Pharmaceuticals, Inc., which appears in the style of this case as the appellee, was formerly a

Bruce J. Toppin, and Steward E. Niles, Jr., New Orleans, La., for Searle Laboratories.

Charles Souha, Denver, Colo., William E. Hodgkins, and Gerald L. Walter, Jr., Schwab & Walter, Baton Rouge, La., for Dr. Sehdeva.

Before BROWN, WILLIAMS and JOLLY, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

The appeal in this diversity case presents important questions of Louisiana state law that are particularly appropriate for consideration by the Louisiana Supreme Court. At issue is whether the Cu–7 intrauterine device manufactured by appellee G.D. Searle & Co. should be treated as a prescription drug under the Louisiana law of products liability. The case also raises a question regarding the scope of protection from strict liability afforded to manufacturers of prescription drugs under Louisiana's learned intermediary doctrine. Finding no controlling Louisiana precedent on either issue, we certify the questions presented to the Louisiana Supreme Court.

*Statement of the Case*

A. *Background*

In October, 1978, a Cu–7 intrauterine contraceptive device (IUD) was inserted into Linda McPheron's uterus by her physician.[1] The IUD was manufactured by appellee G.D. Searle & Co.[2]

The Cu–7 device employs a small strand of copper, which allegedly enhances its contraceptive effect. Because it contains a heavy metal, the Cu–7 is classified as a "drug-IUD" by the Food and Drug Administration. 21 C.F.R. § 310.502(a) (1988). Like all IUD's, the Cu–7 can be used only upon prescription and insertion by a physician.

wholly-owned subsidary of G.D. Searle & Co., and is now completely merged into its parent company. We refer to the appellee as "G.D. Searle" or "Searle."

The danger that an IUD might perforate the uterus is a known hazard of this method of contraception. Searle warns physicians of this risk through a pamphlet in the form prescribed by the FDA. 21 C.F.R. § 502(b)(1). A patient brochure with similar warnings is also available to a patient through her physician. 21 C.F.R. § 502(b)(2). Searle does not warn the patient directly of any risks attendant to the use of the IUD.

Beginning in October, 1981, Ms. McPheron experienced pain, fever, bleeding, and cramps. She was seen by a physician at this time, and again in August, 1982, when the physician advised Ms. McPheron that he was unable to locate the IUD through a routine examination. On September 29, 1982, Ms. McPheron underwent exploratory surgery. The Cu–7 device was found outside her uterus. The IUD had perforated her uterus and her small intestine.

Ms. McPheron filed suit against Searle, alleging various products liability claims under Louisiana law.[3] On the first day of trial, before evidence was presented, the trial court issued an oral ruling holding that Cu–7 IUD was a prescription drug. The court also determined that Louisiana's learned intermediary doctrine, which applies to prescription drugs, precluded Ms. McPheron's claims that the Cu–7 was defectively designed and unreasonably dangerous per se. The district court's holding prevented Ms. McPheron from presenting evidence of a design defect in the Cu–7 IUD at the jury trial. The only claim allowed to go forward was Ms. McPheron's contention that Searle had not provided adequate warnings of the risks of uterine perforation to Ms. McPheron's physicians.[4]

At the close of Ms. McPheron's case, the district court granted Searle's motion for a directed verdict. The court determined that the evidence conclusively established that the warnings provided by Searle to Ms. McPheron's physicians were adequate. Ms. McPheron does not contest the district court's conclusion that Searle adequately warned her physicians of the risk of uterine perforation. Instead, she appeals the court's pre-trial determination that the Cu–7 is a prescription drug, and that Louisiana's learned intermediary doctrine precludes most of her products liability claims.

## B. *Legal Issues*

We briefly discuss the legal issues involved in this appeal, without expressing any opinion on the merits of these questions. Our sole purpose is to provide a context which explains our decision to certify the questions presented to the Louisiana Supreme Court.

The learned intermediary doctrine has its roots in § 402A of the Restatement (Second) of Torts, the fountainhead of strict liability for defective products. Comment k of this Section recognizes that:

> There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs.... Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous.

---

3. The suit was removed to federal court on diversity grounds. A second action, involving malpractice claims against Ms. McPheron's physicians, Dr. Edgardo Leonidas and Dr. Parkash Sehdeva, was consolidated with Ms. McPheron's suit against Searle in the court below. The physicians prevailed at trial, and Ms. McPheron does not appeal the verdict in their favor.

4. Searle argues that the district court's ruling that Ms. McPheron could not present evidence on her defective design and unreasonably dangerous per se claim is not reviewable because Ms. McPheron did not provide this Court with a transcript of her offer of proof indicating the substance of the excluded testimony. Even assuming that the court's holding should be reviewed as an evidentiary ruling, Searle's argument is without merit. A district court's exclusion of evidence is reviewable when "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Fed.R. Evid. 103(a)(2). In the present case, the transcript of the district court's oral ruling and the rest of the record on appeal fully apprise this Court of the substance of the excluded evidence. *Cf. Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1333 (9th Cir.1985).

Restatement (Second) of Torts, § 402A, comment k (1965) (emphasis in original).

Comment k does not purport to define the "proper directions and warning" for unavoidably unsafe products. The courts adopting the comment have determined, however, that the manufacturer of a prescription drug must give adequate warnings of the potential dangers and side effects of the product to the medical community. The prescribing physician acts as a "learned intermediary" who determines whether the drug is appropriate for the patient. Because the physician intercedes in this manner, the manufacturer of a prescription drug need not warn a patient directly of the risks of the product. *See Mauldin v. Upjohn Co.*, 697 F.2d 644, 647 (5th Cir.), *cert. denied*, 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983); *Timm v. Upjohn Co.*, 624 F.2d 536, 538 (5th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1981); *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1276 (5th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974).

Louisiana has adopted the comment k approach. Under Louisiana law, the manufacturer of a prescription drug:

> has no duty to warn the consumer directly of any risk or contraindications associated with the drug. The manufacturer of the drug has fulfilled its obligation when it has informed the prescribing and treating physicians of the risks of harm from the drug so that they may intelligently decide on its use and advise the patient.

*Cobb v. Syntex Laboratories, Inc.*, 444 So.2d 203, 205 (La.App. 1st Cir.1983) (oral contraceptive). *See also Rhoto v. Ribando*, 504 So.2d 1119, 1123 (La.App. 5th Cir.),

*writ denied*, 506 So.2d 1225 (La.1987) (prescription drugs used in weight control regime); *Kinney v. Hutchinson*, 468 So.2d 714, 717–18 (La.App. 5th Cir.), *writ denied*, 472 So.2d 35 (La.1985) (Preludin); *Miller v. Upjohn Co.*, 465 So.2d 42, 45 (La.App. 1st Cir.), *writ denied*, 467 So.2d 533 (La.1985) (tetracycline).

Ms. McPheron contends that the court below erred in applying this doctrine to the Cu–7 IUD because it is not a "true" prescription drug, which is taken into and absorbed by the body. The great weight of the authority in other jurisdictions is to the contrary; most courts have found that a medical device which must be prescribed and inserted by a physician falls under the learned intermediary doctrine.[5] The minority view is that the question of whether a prescription medical device is an unavoidably unsafe product entitled to comment k protection is a question of fact for the jury. *Kociemba v. G.D. Searle & Co.*, 680 F.Supp. 1293, 1300–01 (D.Minn.1988) (Cu–7 IUD). All of the Louisiana cases applying the learned intermediary doctrine have involved prescription drugs, leaving us with no controlling precedent on whether a prescription medical device such as the Cu–7 IUD falls into this category.

If Searle's Cu–7 IUD is insulated from some claims of strict liability under Louisiana's learned intermediary doctrine, a second question arises as to the extent of this protection. The district court applied the well-settled rule that the manufacturer of a prescription drug has no duty to warn the patient directly of the risks of the product. Thus, the court determined that Ms. McPheron could not bring a claim alleging that Searle did not provide her with ade-

5. Many courts have concluded that IUD's, including the Cu–7 IUD, are unavoidably unsafe products within the meaning of comment k, so that the learned intermediary doctrine applies. *Allen v. G.D. Searle & Co.*, 708 F.Supp. 1142, 1147–48 (D.Or.1989) (Cu–7 IUD); *Spychala v. G.D. Searle & Co.*, 705 F.Supp. 1024, 1031–32 (D.N.J.1988) (Cu–7 IUD); *Hill v. Searle Laboratories*, 686 F.Supp. 720, 725 (E.D.Ark.1988) (Cu–7 IUD); *Lacy v. G.D. Searle & Co.*, 1988 Del.Super. Lexis 205, 1988 WL 67825 (Del.Super.Ct.1988) (Cu–7 IUD); *McKee v. Moore*, 648 P.2d 21, 23–25 (Okla.1982) (Lippes Loop IUD);

*Terhune v. A.H. Robins Co.*, 90 Wash.2d 9, 577 P.2d 975, 977–79 (1978) (Dalkon Shield IUD). Other medical devices that are prescribed or inserted by a physician have also been held to fall into this category. *Phelps v. Sherwood Medical Industries*, 836 F.2d 296, 303 (7th Cir. 1987) (cardiac catheter); *Kirsch v. Picker Int'l, Inc.*, 753 F.2d 670, 671 (8th Cir.1985) (x-ray); *Brooks v. Medtronic, Inc.*, 750 F.2d 1227, 1231–32 (4th Cir.1984) (pacemaker); *Perfetti v. McGhan Medical*, 99 N.M. 645, 662 P.2d 646, 650 (N.M.App.), *cert. denied*, 99 N.M. 644, 662 P.2d 645 (1983) (mammary prosthesis).

quate warnings of the danger of uterine perforation. *See Cobb*, 444 So.2d at 205; *Kinney*, 468 So.2d at 717–18. The court also determined, however, that the learned intermediary doctrine precluded Ms. McPheron's claims that the Cu–7 IUD was defectively designed and unreasonably dangerous per se.

In support of the district court's ruling, Searle argues that under the learned intermediary doctrine a prescription product with adequate warnings to the medical community is not defective as a matter of law. This position finds support in the language of comment k, which states that an unavoidably unsafe product, when "properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous." Restatement (Second) of Torts, § 402A comment k. Searle also relies on *Brown v. Superior Court (Abbott Laboratories)*, 44 Cal.3d 1049, 245 Cal.Rptr. 412, 417–22, 751 P.2d 470, 475–80 (1988), where the California Supreme Court held that the manufacturer of a prescription drug cannot be held strictly liable for a defectively designed product. Instead, in California, strict liability attaches only if a manufacturer fails to provide an adequate warning to the physician regarding the risks and potential side effects of the drug. *Id.* 245 Cal.Rptr. at 418, 751 P.2d at 477.

Other jurisdictions, however, have adopted the opposite view. This Court, applying Mississippi law, has stated that "the learned intermediary doctrine applies only to the inadequate warning claims; it does not address design defects." *Hurley v. Lederle Laboratories*, 863 F.2d 1173, 1180 (5th Cir.1988). Similarly, the Fourth Circuit has concluded that under Virginia law "an adequate warning [on a prescription drug] does not foreclose a design defect claim." *Abbot v. American Cyanamid Co.*, 844 F.2d 1108, 1115 (4th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). Significantly, courts deciding Searle's strict liability for injuries caused by the Cu–7, the very product at issue in this case, have also split on this question. *Compare Hill v. Searle Laboratories*, 686 F.Supp. 720, 725–26 (E.D.Ark. 1988) (learned intermediary doctrine applies to the Cu–7 and precludes a design defect claim), *with Allen v. G.D. Searle & Co.*, 708 F.Supp. 1142, 1147–50 (D.Or.1989) (learned intermediary doctrine applies but design defect claim may go forward).

In other jurisdictions, then, there is conflicting authority on whether a design defect or other strict liability claim can be maintained against a prescription drug manufacturer when adequate warnings of the risks of the drug are provided to the prescribing physician. The Louisiana cases applying the learned intermediary doctrine provide no indication of how the Louisiana Supreme Court would decide this question.[6]

Solely because the Court might find it useful, we have included the preceding analysis as we have gone beyond the briefs of the parties in our research. Perceiving that the issues presented in this case raise important questions of state law, we certify the following two questions to the Louisiana Supreme Court.

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF LOUISIANA PURSUANT TO RULE XII, LOUISIANA SUPREME COURT RULES

TO THE SUPREME COURT OF LOUISIANA AND THE HONORABLE JUSTICES THEREOF:

---

**6.** While Searle contends that the Louisiana courts have already decided this issue in its favor, the cases cited by Searle belie this assertion. Indeed, none of the cases that Searle refers to have addressed the question of whether the manufacturer of a prescription drug can be strictly liable for a defective product when adequate warnings of the dangers of the drug have been provided to the medical community. In *Cobb*, for example, the court examined the summary judgment evidence and determined that no defect in the design or composition of the drug was shown. Thus, the court did not consider the merits of this claim. 444 So.2d at 205. Similarly, in *Miller v. Upjohn*, the court was faced only with the question of whether the manufacturer knew of the side effects of the drug, creating a duty to warn physicians of this risk. 465 So.2d at 45. The adequacy of warnings provided to physicians was also the sole focus in *Kinney v. Hutchinson*, 468 So.2d at 718.

A. *Style of Case.*

The style of the case in which this certificate is made is *Linda McPheron, Etc., Et Al., Plaintiffs, Linda McPheron Hodges, Plaintiff–Appellant, versus Searle Laboratories, Inc., Et Al., Defendants–Appellees,* Case No. 88–3611, United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Middle District of Louisiana.

B. *Questions Certified to the Louisiana Supreme Court.*

1. Should an intrauterine contraceptive device which has been approved and regulated by the Food and Drug Administration as a drug and which must be prescribed and inserted by a licensed physician be treated as a prescription drug under the Louisiana law of products liability?

2. If the answer to question 1 is affirmative, is the manufacturer of such a prescription drug insulated under the Louisiana law of products liability from claims by the user that the product is "defectively designed" or "unreasonably dangerous *pro se*" when it is undisputed that adequate warnings of the risks of the product have been provided to the physician?

We disclaim any intention or desire that the Louisiana Supreme Court confine its reply to the precise form or scope of the questions certified. The answers provided by the Louisiana Supreme Court will be determinative of the issues on appeal in this case.

The record, and copies of the parties' briefs are transmitted herewith.

QUESTIONS CERTIFIED.