Lola **TAYAR**, Plaintiff-Appellee,

v.

**ROUX LABORATORIES, INC.,**
Defendant-Appellant.

No. 71–1501.

United States Court of Appeals,
Tenth Circuit.

May 11, 1972.

Rehearing Denied July 13, 1972.

William R. Saied, Oklahoma City, Okl. (Floyd L. Martin, Oklahoma City, Okl., on the brief), for appellee.

J. A. O'Toole, Oklahoma City, Okl., for appellant.

Before HILL, SETH and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Lola May Tayar brought this diversity action seeking damages against Roux Laboratories, Inc. (Roux) for personal injuries suffered by her as a result of the use of certain hair rinses manufactured by Roux. The trial was conducted to the Court without a jury. The Court held Roux liable for Tayar's injuries and awarded her $5,821.55.

In September of 1966 Tayar enrolled in beauty college to become a licensed beautician. In April of 1967 she saw a physician because she was suffering from contact dermatitis. She was licensed on July 1, 1967 and went to work at a beauty salon. In September of 1967 her hands broke out in tiny water blisters. A physician advised her not to work until her condition cleared. On October 6, 1967 Tayar saw Dr. Mark Allen Everett, a dermatologist, when her condition did not clear up. Within a three week period she worked only one week. She was hospitalized from November 2, through November 7, 1967 and treated by Dr. Everett for skin eruptions over most of her body. She was given a series of patch tests. She reacted positively to 6 of 49 agents.

Tayar opened her own shop in the hope that she could control the conditions and products she used. In May of 1968 she used a Roux Fanci-full Rinse which she had been informed, when she attended beauty school, was harmless. She applied White Minx Rinse with her bare hands to a customer's hair. She broke out again and was unable to work for about three and one-half months. She returned to her former job in a grocery store. By that time she was sensitized to the point where certain clothing would cause her to break out.

As a sales clerk in the grocery business she could expect to earn about $80 per week. As a beautician she could earn about $200 per week. The total cost of her medical treatment amounted to $714.39.

Roux contends that: (1) there is no competent evidence to establish that it owed a duty to warn Tayar of any dangers incident to the use of its products; (2) there is no competent evidence establishing a causal relationship between Tayar's injury and the use of its products; and (3) Tayar's injury was the result of an idiosyncratic allergic reaction which precludes recovery.

The trial court found that Tayar was sensitive to White Minx; that she was one of a class that includes about one-fifth of the population in the United States who are allergic to some of the ingredients in Roux's products; that Roux failed to perform its duty to warn Tayar of the dangerous aspects of its products; that Tayar's injuries were caused in whole or in part by Roux's products; and that Roux's products were a substantial factor in causing Tayar's damages and injuries.

The manufacturer of a product has a duty to warn consumers of potential dangers from the product when it knows or should know they exist. Roux alleges that no evidence was introduced

which showed that it knew its products would injure the user or that any particular ingredients in the products were dangerous. Until Tayar's injuries, Roux believed that its rinse products were harmless.

■ Tayar alleges that Roux was negligent in not attaching warning labels to its products advising consumers to wear rubber gloves during application. There were no warning labels on the Roux products Tayar used when she was injured. There is no evidence indicating how many people were sensitive to the product who might be damaged by its use. Tayar's condition is the only incident of injury reported. The record is devoid of substantial evidence that Roux knew the dangerous character of its products prior to Tayar's injuries and complaint. It was not, accordingly, required to warn consumers until Tayar was injured.

Roux contends that there is no evidence establishing a causal relationship between Tayar's injury and the use of its product. Dr. Everett testified that Tayar reacted positively to a group of agents which included Roux's Fanci-full Rinse, but he did not state that its product caused Tayar's original dermatitis. His expert testimony did not eliminate other possible causes of her injuries. Cohenour v. Smart, 205 Okl. 1666, 240 P.2d 91 (1951).

■ Tayar testified that she tried to isolate the cause of her dermatitis. She said that she broke out after she used Roux Fanci-full Rinse. However, she was using other products simultaneously and one of them or a combination of any of the products might have caused her reaction. The evidence is insufficient to establish a causal relationship between her injuries and her use of Roux's products. ·

■■ Roux alleges that Tayar's injury was the result of an idiosyncratic allergic reaction which precludes recovery. Damages for injuries is denied when the use of a product is safe for the vast majority of consumers. Merrill v. Beaute Vues Corporation, 235 F.2d 893 (10th

Cir. 1956). When a manufacturer places a product on the market, knowing that a few, not in an identifiable class, may suffer allergic reactions not common to the normal person, the injured party cannot recover. Merrill v. Beaute Vues Corporation, *supra*. The rule is based on the proposition that an injury may be caused by an allergy or unusual susceptibility which the manufacturer cannot reasonably foresee in relation to the use of its product. The manufacturer is not, under these circumstances, liable for the purchaser's condition or obligated to anticipate the harmful consequences.

"Warranties do not extend to injuries caused by peculiar idiosyncracies or physical condition of a user which are not reasonably foreseeable. The rule as to negligence in such cases applies to warranties." 235 F.2d at 898.

See also Ray v. J. C. Penney Company, 274 F.2d 519 (10th Cir. 1959).

Dr. Everett testified that one-fifth of the population are eczematous reactors; that some people with an eczematous reaction respond to contactants but are not necessarily allergic; and that those suffering from allergies are a small number of all persons suffering from eczematous reactions. The trial court misconstrued Dr. Everett's testimony to mean that one-fifth of the population is allergic to some of the ingredients contained in Roux's rinse products. The trial court improperly concluded from Dr. Everett's testimony that because about one-fifth of the population are eczematous reactors, these people would react from the use of Roux's rinses.

■ Roux's rinse products were universally used and accepted as harmless. No evidence was introduced to show that anyone other than Tayar suffered an adverse reaction from the use of the products. She had an allergic or an idiosyncratic reaction which caused her to be unusually susceptible to agents which are normally safe for use by the public. In these circumstances the manufacturer is not liable for damages.

Reversed.