**Jonnis Earl McKEE and Carol Ann McKee, Appellants,**

v.

**Dr. George MOORE and Ortho Pharmaceutical Corporation, Appellees.**

**No. 54312.**

Supreme Court of Oklahoma.

June 1, 1982.

Rehearing Denied July 20, 1982.

Lee E. Witcher, Oklahoma City, for appellants.

John Wiggins, Oklahoma City, for appellee Ortho Pharmaceutical Corp.

HODGES, Justice.

The dispositive issue on appeal is whether the manufacturer of an intrauterine contraceptive device [IUD] has the duty to directly warn the ultimate consumer, or if a warning to the physician of possible side effects is sufficient.

Ortho Pharmaceutical Corporation [Ortho], appellee, is the manufacturer of the Lippes Loop, an IUD. One of these devices was inserted by Dr. George Moore in the uterus of Carol Ann McKee, appellant. Five years later, after a pregnancy, a miscarriage, a tubal ligation, and during a hysterectomy, it was discovered that the IUD had perforated the uterus and migrated in

the patient's body which required surgical removal. The patient alleged that she had not been warned of the possibility of perforation either by the physician who inserted the IUD, or the nurse who counseled with her prior to the insertion of the device. The patient and her husband brought suit against the physician for negligence and against Ortho alleging manufacturers' products liability based on defective design and failure to warn the patient directly of attendant hazards associated with the IUD.

Ortho contends its duty to warn was discharged by a warning of possible uterine perforation in the package insert directed to physicians. The McKees argue that the warning to the physician was insufficient, and that the company had a duty to directly warn ultimate users of the IUD. Ortho moved for a summary judgment which the trial court granted, and the patient appealed.

I

▬ The manufacturer of a product has a duty to warn the consumer of potential dangers which may occur from the use of the product when it is known or should be known that hazards exist.[1] This Court in *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1361 (1974) approved the principles enunciated in the Restatement (Second) of Torts § 402A (1965)[2] and

adopted the remedy of manufacturers' products liability. Section 402A embodies a doctrine of strict liability concerning products which are introduced into the stream of commerce. Under this principle, even if a product is faultlessly designed and the manufacturer has exercised all possible care in the preparation and sale of his product, it may be considered unreasonably unsafe or defective if it is placed in the hands of the ultimate consumer without adequate warnings of the dangers involved in its use.[3]

▬ A drug manufacturer, like any other manufacturer, may be held liable for a defective product under the doctrine of strict liability. Unlike most other products, however, prescription drugs and devices may cause unwanted side effects even though they have been carefully and properly manufactured. Within the purview of manufacturers' products liability, these drugs are described as "unavoidably unsafe products" but they are not deemed defective or unreasonably dangerous if they are accompanied by proper directions for use and adequate warnings concerning potential side effects. A plaintiff seeking recovery for an injurious side effect from a properly manufactured prescription drug must prove that the drug caused the injury and that the manufacturer breached a duty to

1. *Tayar v. Roux Laboratories, Inc.*, 460 F.2d 494, 495 (10th Cir. 1972).

2. The Restatement (Second) of Torts § 402A, pp. 347–48 (1965) states:
   "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
   (a) the seller is engaged in the business of selling such a product, and
   (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
   "(2) The rule stated in Subsection (1) applies although
   (a) the seller has exercised all possible care in the preparation and sale of his product, and

   (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."
   Comment (a) to § 402A provides:
   "This Section states a special rule applicable to sellers of products. The rule is one of strict liability, making the *seller* subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product. The Section is inserted in the Chapter dealing with the negligence liability of suppliers of chattels, for convenience of reference and comparison with other Sections dealing with negligence. The rule *stated here is not exclusive*, and does not preclude liability based upon the alternative ground of negligence of the seller, where such negligence can be proved."

3. *Mayberry v. Akron Rubber Machinery Corp.*, 483 F.Supp. 407, 411 (N.D.Okl.1979); *Kozlowski v. John E. Smith's Sons Co.*, 87 Wis.2d 882, 891, 275 N.W.2d 915, 917 (1979).

warn of possible detrimental reactions.[4] The manufacturer has a continuing duty to warn of all potential danger, which it knew, or should have known, in the exercise of reasonable care to exist. This duty requires the manufacturer to maintain current information gleaned from research, adverse reaction reports, scientific literature and other available methods.[5]

The parties agree with the general rule enunciated in *Cunningham v. Pfizer*, 532 P.2d 1377 (Okl.1974) that in cases involving prescription drugs, the manufacturer has a duty to warn only the prescribing physician. Appellants contend that the rule is inapplicable because even though an IUD is sold by prescription it is a device rather than a drug.[6] We are not persuaded by this argument.

Comment k of the Restatement (Second) of Torts § 402A (1965)[7] postulates that a drug manufacturer is not to be held strictly liable for injuries caused by an unavoidably dangerous drug if the warning is adequate.[8] The comment relates to "drugs, vaccines, and the like" which cannot be sold except to physicians or under the prescription of a physician. The maxim in these cases is that the duty of a manufacturer is satisfied if an adequate warning is given to the prescribing physician. In the absence of FDA regulations to the contrary, the manufacturer has no obligation to warn a consumer if the prescribing physician has been adequately warned of any adverse side effects. The manufacturer's duty is to warn the physician, who acts as a learned intermediary between the manufacturer and the consumer, because he is in the best position to evaluate the patient's needs, assess the benefits and risks of a particular therapy, and to supervise its use.

It is the physician's duty to inform himself of the qualities and characteristics of those products which he administers or prescribes for use of his patients, and to exercise his judgment, based on his knowledge of the patient as well as the product. The patient is expected to and, it can be presumed, does place primary reliance upon

4. *Lindsay v. Ortho Pharmaceutical Corp.*, 637 F.2d 87, 91 (2nd Cir. 1980).

5. *Wolfgruber v. Upjohn Co.*, 72 App.Div.2d 59, 61, 423 N.Y.S.2d 95 (1979).

6. The FDA now has two categories for IUD's— "drug IUD's" which are permeated with drugs or metals and traditional IUD's. The same warnings are required. See 21 CFD §§ 310.-502, 810.427.

7. The Restatement (Second) of Torts § 402A (1965), Comment k, states:

"Unavoidably unsafe products. There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

8. See *Brochu v. Ortho Pharmaceutical Corp.*, 642 F.2d 652, 656 (1st Cir. 1981); *Lindsay v. Ortho Pharmaceutical Corp.*, 637 F.2d 87, 91 (2nd Cir. 1980); *Timm v. Upjohn*, 624 F.2d 536, 538 (5th Cir. 1980) for further supporting authorities. See also: Twerski, Weinstein, Donoho & Piehler, "The Use And Abuse Of Warnings In Products Liability—Design Defect Litigation Comes Of Age," 61 Cornell L.Rev. 495, 501 (1976); Merrill, "Compensating For Prescription Drug Injuries, 59 Va.L.Rev. 1, 91 (1973).

that judgment. The physician decides which facts should be told to the patient. Thus, if the product is properly labeled and carries the necessary instructions and warnings to fully apprise the physician of the proper procedures for use and the dangers involved, the manufacturer may reasonably assume that the physician will exercise an informed judgment in the best interest of the patient.[9]

An exception to the general rule occurs if the FDA has mandated that warnings be given to the patient as well as to the physician.[10] In *Lukaszewicz v. Ortho Pharmaceutical Corp.*, 510 F.Supp. 961, 963 (E.D. Wis.1981), the court held that the issue of the duty to warn the patient as required by 21 CFR § 310.501 constituted a triable issue of fact when the patient asserted lack of warning by the manufacturer of a birth control pill.

Although the appellants recognize the efficacy of the rule relating to prescription drugs, it is contended the rule is inapplicable to intrauterine devices. This question was presented and answered in *Terhune v. A. H. Robins Co.*, 90 Wash.2d 9, 577 P.2d 975, 978 (1978). The Washington Supreme Court said:

"... We do not see this as a significant distinction. The physician does not confine his practice to the curing of maladies. He is concerned with the total health and physical well-being of his patients and appropriately gives advice upon preventive measures. Certainly the insertion of the Dalkon Shield requires a physician's services, his knowledge and his skill. While the physician does not make the final choice but leaves that to the patient, he advises the patient with

respect to the advantages and disadvantages of various choices, as was done in this case, and it is he who supplies and inserts the device.

\* \* \* \* \* \*

"In any such situation which may come to mind, the patient is expected to look to the physician for guidance and not to the manufacturer of the products which he may use or prescribe in the course of treatment.

"Contrary to the plaintiffs' suggestion, the courts' holdings that the manufacturer's duty to warn runs only to the medical profession and not to the patient have not been confined to cases where 'medicinal drugs' were dispensed. [*McEwen v. Ortho Pharmaceutical Corp.*, 270 Or. 375, 528 P.2d 522 (1974), and *Leibowitz v. Ortho Pharmaceutical Corp.*, 224 Pa.Super. 418, 307 A.2d 449 (1973) involved oral contraceptives; and *Hines v. St. Joseph's Hosp.*, 86 N.M. 763, 528 P.2d 1075 (1974), involved blood for transfusions.]"

■ The manufacturer's duty to warn the ultimate consumer of prescription drugs, or devices, as distinguished from those sold directly to the consumer, is limited to advising the prescribing or treating physician of the drug's or device's potential dangers in the absence of contrary FDA regulations.[11] Once the physician is warned, the choice of treatment and the duty to explain the risk is incumbent on the physician.[12]

JUDGMENT OF TRIAL COURT AFFIRMED. OPINION OF COURT OF APPEALS DIVISION I WITHDRAWN AND VACATED.

---

**9.** *Terhune v. A. H. Robins Co.*, 90 Wash.2d 9, 577 P.2d 975, 978 (1978).

**10.** The initial marketing packet for the Lippes Loop warned the physician of possible perforation and gave instructions to be relayed to the patient. The current FDA regulations require that the patient be given a patient brochure by the physician, nurse, or other trained health professional prior to insertion of the IUD and perforation is listed in the brochure as one of several possible adverse effects.

**11.** *Fellows v. USV Pharmaceutical Corp.*, 502 F.Supp. 297, 299 (D.Md.1980).

**12.** *Cooper v. Bowser*, 610 S.W.2d 825, 831 (Tex.Civ.App.1980). See *Scott v. Bradford*, 606 P.2d 554 (Okl.1979) for a complete discussion of the doctrine of informed consent. L. Friemer & Friedman, Products Liability § 33 (1980).

IRWIN, C. J., and LAVENDER, SIMMS, HARGRAVE and OPALA, JJ., concur.

DOOLIN and WILSON, JJ., dissent.