Cindy S. **PERCIVAL** and John F. Percival, parents and natural guardians of Charles Thomas Percival, an infant, Cindy S. Percival, individually; and John F. Percival, individually, Plaintiffs,

v.

**AMERICAN CYANAMID COMPANY, a corporation, d/b/a Lederle Laboratories, Defendant.**

No. CIV-85-2671-P.

United States District Court, W.D. Oklahoma.

Dec. 9, 1987.

Ed Abel, Glen Mullins, Oklahoma City, Okl., for plaintiffs.

William G. Smith, Brenda Penland, Stephen Peterson, Oklahoma City, Okl., John Clough, Mary Ann Murphy, Larry Larson, Barry L. Rodolff, Odette L. Ashley and JoAnn M. Zaleskas, Santa Monica, Cal., for defendant.

## ORDER

PHILLIPS, District Judge.

Before the Court are two motions for partial summary judgment filed October 27, 1987, by defendant American Cyanamid Company, d/b/a Lederle Laboratories (hereinafter "Lederle"). The first motion concerns the learned intermediary and sophisticated user rules; the second motion concerns the adequacy of Lederle's warnings. Plaintiffs responded in opposition to both motions on November 16, 1987, and both parties presented oral argument to the Court on November 23, 1987.[1]

The facts presented to the Court upon a Motion for Summary Judgment must be construed in a light most favorable to the nonmoving party. *Board of Education v. Pico,* 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982); *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If there can be but one reasonable conclusion as to the material facts, summary judgment is appropriate. The Court is precluded from granting summary judgment where there is a genuine dispute as to a fact which is material, that is a fact which is relevant under the applicable substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id.* Finally, the movant must show entitlement to judgment as a matter of law. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985).

For the reasons set forth below, both of Lederle's motions for partial summary judgment are GRANTED.

## A. INTRODUCTION

In 1981 and 1982, when Charles Thomas Percival was an infant, he received three vaccinations of Lederle's DTP vaccine known as Tri–Immunol. He thereafter developed severe and permanent neurological damage, allegedly as a result of an adverse reaction to the DTP vaccine.

In each instance, the vaccine was administered by Dr. Mary Abbott in her office in Norman, Oklahoma. Dr. Abbott was young Charles Percival's treating physician, and treated him numerous times.

Charles Percival's parents brought this action against the manufacturer of the DTP vaccine on various theories, including, *inter alia,* that Lederle failed to directly warn them of the possible adverse reactions to the DTP vaccine, and that Lederle

---

1. The parties presented oral argument on sixteen defense motions during the November 23, 1987, hearing. Some of the motions, including the two which are the subject of this Order, were taken under advisement. *See* Order entered November 25, 1987.

failed to adequately warn Dr. Abbott of the possible adverse reactions.

Lederle contends in the two motions for partial summary judgment presently before the Court, that its duty was to warn the prescribing physician, not the ultimate consumer, and that its warning contained in the package insert was adequate.

This first issue presented by these motions is whether Lederle had a duty to directly warn the plaintiffs of the risks involved in taking the vaccine, or whether its duty was to warn the prescribing physician.

If Lederle's duty was to warn the prescribing physician rather than the plaintiffs, the second issue presented is whether Lederle's warning to the physician was adequate as a matter of law.

## B. LEARNED INTERMEDIARY RULE

■ The general rule in manufacturers' product liability actions in Oklahoma is that a manufacturer has a duty to warn the consumer of potential dangers which may occur from the use of its product when the dangers are known or should be known. *Kirkland v. General Motors Corp.*, 521 P.2d 1353 (Okla.1974).

However, in cases involving prescription drugs, the manufacturer has a duty to warn only the prescribing physician. *Cunningham v. Pfizer*, 532 P.2d 1377 (Okla. 1974). The reason for this rule is that the physician acts as a learned intermediary between the manufacturer and the consumer. *McKee v. Moore*, 648 P.2d 21 (Okla. 1982). The physician is in the best position to evaluate the patient's needs, to balance the benefits and risks of the particular prescription drug, and to supervise its use. *Id.* The patient is expected to and presumably does rely on the physician's judgment. *Id.*

■ One exception to the learned intermediary rule arises when the prescription drug is not administered as a prescription drug. *Cunningham, supra.* In *Cunningham* a fifteen year-old boy took an oral polio vaccine at a mass immunization clinic in Tulsa, Oklahoma. The manufacturer of the vaccine had not given any direct warning to the boy or his parents concerning the possible effects of the vaccine. The Oklahoma Supreme Court held that the manufacturer did have a duty to warn the consumers directly because the vaccine had been administered in a mass immunization program and the evidence did not indicate the doctor present at the clinic assessed medical risks in light of his knowledge of each patient's needs and susceptibilities. *Id.* at 1381. *Davis v. Wyeth Laboratories,* 399 F.2d 121 (9th Cir.1968); *Reyes v. Wyeth Laboratories,* 498 F.2d 1264 (5th Cir.1974). *See also Williams v. Lederle Laboratories,* 591 F.Supp. 381, 388–89 (S.D.Ohio 1984) (containing a concise history of the development of this exception to the learned intermediary rule).

■ The Oklahoma Supreme Court also recognizes a second exception to the learned intermediary rule. It arises if the FDA has mandated, with respect to a particular drug or device, that warnings be given to the patient as well as to the physician. *McKee v. Moore*, 648 P.2d 21 (Okla. 1982).

■ Neither exception arises in the instant case. There is no evidence the FDA mandated that warnings with respect to Tri–Immunol be given to the patient directly. Nor do the facts give rise to the mass immunization exception. Dr. Abbott was the treating physician and had treated young Charles Percival numerous times. She administered the vaccine in her office.

It is the physician's duty to inform herself of the qualities and characteristics of the prescription drugs she administers, and to exercise her judgment based on her knowledge of the patient and the product. The physician decides which facts should be told to the patient. *McKee, supra* at 24–25. "Thus, if the product is properly labeled and carries the necessary instructions and warnings to fully apprise the physician of the proper procedures for use and the dangers involved, the manufacturer may reasonably assume that the physician will exercise an informed judgment in the best interest of the patient." *Id.* at 25.

Accordingly, this Court holds that Lederle did not have a duty to warn the plaintiffs directly of the risks involved in its vaccine. Rather, Lederle's duty was to warn the prescribing physician, who acts as a learned intermediary.[2]

## C. ADEQUACY OF WARNINGS

The next issue to be addressed is whether the warning Lederle gave to the prescribing physician, Dr. Abbott, was adequate as a matter of law.

■ Though ordinarily the adequacy of a warning is a question of fact for the jury, *Ross v. Jacobs*, 684 P.2d 1211 (Okla.App. 1984), it is not improper for the court to determine that a warning is adequate as a matter of law. *Steele v. Daisy Mfg. Co.*, 743 P.2d 1107 (Okla.App.1987).

The DTP vaccine is used to immunize children against the diseases of diphtheria, pertussis (whooping cough) and tetanus. The pertussis component can cause adverse reactions ranging from swelling and fever to, rarely, severe brain damage or death. *See Toner v. Lederle Laboratories*, 779 F.2d 1429, 1430–31 (9th Cir.1986) for a concise, informative discussion of the development and licensing of this vaccine.

Lederle furnished purchasing doctors, such as Dr. Abbott, with package inserts describing possible adverse reactions and contra-indications to the vaccine's use.

■ The package insert dated February 1980 was the warning distributed along with vials of vaccine distributed during 1981 and 1982. It contained the following language:

ADVERSE REACTIONS

Adverse reactions may be local and include pain, erythema, tenderness and induration at the site of injection. Significant reactions attributed to the pertussis vaccine component have been high fever

greater than 39°C), a transient shock-like episode, excessive screaming, somnolence, *convulsions, encephalopathy* and thrombocytopenia. Such reactions almost always appear within 24 to 48 hours after injection but have been thought to occur after an interval as long as seven days. A small nodule may develop at the site of injection and remain for a few weeks before being completely absorbed. Sterile abscesses have been reported. Systemic reactions include mild to moderate transient fever, chills, malaise, and irritability.

*Neurological disorders* such as encephalopathy, possibly due to the pertussis component, have been reported to occur rarely following the injection of this product and they *may be fatal, or result in permanent damage to the central nervous system.*

\*      \*      \*      \*      \*      \*

Should symptomatology referable to the central nervous system develop following administration, no further immunization with this product should be attempted.

Routine immunization should be postponed or avoided in patients with acute infections, or a personal or family history of neurological disturbances. [Exhibit A to Lederle's Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment on the Issue of Warnings (hereafter, "Lederle's Brief") (emphasis added).]

The package insert specifically warned of convulsions and encephalopathy, and warned that rarely such neurological disorders may be fatal or result in permanent brain damage. Young Charles Percival's injuries have been characterized by plaintiffs as "seizure disorder," "infantile

---

**2.** Lederle also urges the position that Dr. Abbott was a "sophisticated user" of the vaccine and therefore Lederle had no duty to warn the plaintiffs directly. Lederle cites *Littlehale v. E.I. Du-Pont de Nemours & Co.*, 268 F.Supp. 791 (S.D.N.Y.1966) in support of this position. *Littlehale* dealt with personal injury resulting from an explosion of blasting caps. The court held there

was no duty to warn the particular purchaser of the blasting caps because the danger was generally known to the trade or profession which purchased them. The court followed with the conclusion that since there was no duty to warn the purchaser, there could be no duty to warn the purchaser's employee. *Id.* That fact situation is unlike the situation before this Court.

spasms"[3] and "moderate to severe retardation." Thus the package insert warned of the very injuries suffered by Charles Percival.

Furthermore, Dr. Abbott, the treating physician, testified the warning contained in the package insert was sufficient to apprise her of the adverse reactions to DTP as of 1981. [Exhibit C to Lederle's Brief.]

The warning in the instant case is identical to that in *Hurley v. Lederle Laboratories*, 651 F.Supp. 993 (E.D.Tex.1986), wherein the court found the warning adequate as a matter of law.

The *Hurley* court cited with approval *Smith v. Wyeth Laboratories, Inc.*, No. 84–2002, slip op. (S.D.W.Va. August 21, 1986), which dealt with a Wyeth package insert which was virtually identical to the Lederle package insert. The *Smith* court also found the warning adequate as a matter of law, stating:

> The plaintiffs also contend that the defendants are liable because they failed to warn consumers directly or to require doctors to warn their patients of the danger of DTP vaccines. As observed earlier, no such duty exists with regard to manufacturers of prescription drugs. The only duty of such manufacturers is to adequately warn the prescribing physician of the drug's dangerous propensities. Accordingly, the adequacy of the warnings communicated to the physicians prescribing the DTP vaccine must next be considered.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> The plaintiff cites no authority for the proposition that a drug manufacturer has a duty to warn prescribing physicians of the rate of adverse reactions. As a practical matter, this would be extremely difficult, perhaps impossible, with respect to a drug like the DTP vaccine which has many possible harmful side effects. Moreover, the warning states "The below-listed serious, and occasionally fatal adverse reactions have been reported...." Thereafter, the warning lists with specificity seven serious reactions, one of which ultimately inflicted the minor plaintiff. The warning also refers the physician to medical resource material further explaining the possible consequences of administering the DTP vaccine. Based upon the foregoing, it is clear that the warning adequately warns of the severity and nature of adverse reactions as a matter of law. The position of the plaintiffs that the defendants should have explained the advantages of a fractionated-cell vaccine in relation to a whole-cell vaccine is untenable. The plaintiffs offer no authority for their argument that a drug manufacturer may be required to represent that other drugs with similar effects are safer. Further, it does not appear that the fractionated-cell vaccine was distributed in the United States at the time that the minor plaintiff was vaccinated.... The warnings were adequate as a matter of law. [*Smith, supra,* slip op. at 23–25 (citations and footnote omitted.) ]

In accordance with the discussion above, this Court finds the warning contained in the package insert dated February 1980 was adequate as a matter of law to apprise purchasing physicians of the risks involved in its vaccine.

## D. CONCLUSION

Lederle did not have a duty to warn plaintiffs directly of the risks involved in its vaccine. Rather, Lederle's duty was to warn the prescribing physician, who acts as a learned intermediary.

Lederle's warning contained in the package insert dated February 1980 was adequate as a matter of law to apprise purchasing physicians of the risks involved in its vaccine.

Accordingly, Lederle's motion for partial summary judgment regarding the learned intermediary and sophisticated user rules is hereby GRANTED. Lederle's motion for

---

**3.** "Infantile spasms are a unique form of seizure disorder...." Acardi, *Epilepsy in Children*, International Review of Child Neurology, 4th Vol. Raven Press, N.Y. (1986) (cited in Lederle's Brief at 9).

partial summary judgment on the adequacy of warnings is hereby GRANTED.