**Sue TYLER, By and Through her Personal Representative Don TYLER, and Sabrina Tyler, by and through her Guardians ad Litem Brett and Loydell Miller, Plaintiffs,**

v.

**STERLING DRUG, INC., Defendant.**

No. 96–CV–531–C.

United States District Court,
N.D. Oklahoma.

July 14, 1998.

---

**15.** Based on the Court's ruling, Mitchell's motion in limine is moot (Docket No. 53).

Randy Rankin, Tulsa, OK, George Steven Stidham, Brian T. Inbody, Sneed Lang PC, Tulsa, OK, Jeffrey Scott Swyers, U.S. Dept. of Justice, Washington, DC, Lawrence S. Kullman, Lewis & Kullman, New Orleans, LA, for plaintiff.

K. Clark Phipps, Daniel E. Holeman, Martha J. Phillips, Kirsten E. Pace, Atkinson Haskins Nellis, Boudreaux Holeman Phipps, Tulsa, OK, Michael J. Bonesteel, Jeffrey B. Margulies, Karen S. Fishman, Dennis K. Wheeler, Shanna R. Davis, Cary D. Glassner, Haight Brown & Bonesteel, Santa Monica, CA, William F. Goodman, Frank Wood, Watkins & Eager, Jackson, MS, for defendant.

## ORDER

H. DALE COOK, Senior District Judge.

At the hearing on June 17, 1998, the parties agreed to submit the *Daubert* motions to the Court for determination on the record unless a hearing was deemed necessary by the Court. Since the June 17 hearing, both parties have filed supplemental pleadings regarding the *Daubert* motions. The Court, having reviewed the record, finds the record sufficient for decision without further hearings. Accordingly based on the record, the Court enters the following orders regarding certain expert testimony and evidence proffered for trial and challenged under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and various Federal Rules of Evidence.

*Sterling's Motion to Exclude Anecdotal Case Reports and Case Series*

■ Sterling seeks to exclude any reference to anecdotal case reports on the issue of notice and as a basis for expert opinion that Sterling should have warned of the association of aspirin to Reye's Syndrome by January 1979. Aspirin has been around since 1903. Reye's Syndrome was identified in 1963. In January 1979, the literature pertaining to Reye's Syndrome consisted of anecdotal case reports, case series and review articles. An anecdotal case report is essentially an anecdotal rendition of a particular practitioner's clinical experience with one or more patients. Sterling seeks to exclude the reports under (1) FRE 703 as not a proper basis for formulating an expert opinion because the reports are not the type reasonably relied on by experts in forming an opinion on medical causation and warning; (2) *Daubert* as scientifically unreliable; (3) FRE 403 as irrelevant and prejudicial; and (4) FRE 802 as hearsay.

Plaintiffs rely on the anecdotal reports as information in the public domain to allegedly show the state of medical knowledge by January 1979. Plaintiffs contend that these reports relate to Sterling's duty to conduct investigations or research and warn the public of possible dangers from the use of its products. These reports were allegedly available in various medical journals and were allegedly assessable to Sterling by January 1979.

■ The Court finds that plaintiffs may rely on the anecdotal reports on the issues of notice and failure to warn. The Court is to look to state law on substantive matters regarding product liability cases. Accordingly a federal court will look to state law in determining what criteria should be applied in determining whether a manufacturer had a duty to warn the consuming public. Oklahoma law provides:

A plaintiff seeking recovery for an injurious side effect from a properly manufactured prescription drug must prove that the drug caused the injury and that the manufacturer breached a duty to warn of possible detrimental reactions. The manufacturer has a continuing duty to warn of all potential danger, which it knew, or should have known, in the exercise of reasonable care to exist. This duty requires the manufacturer to maintain current information gleaned from research, adverse reaction reports, scientific literature and other available methods.

*McKee v. Moore,* 648 P.2d 21, 23 (Okla. 1982).

Under Oklahoma law, the anecdotal reports are the type of evidence that is admissible on the notice issue in a product liability case. Other courts have admitted such reports, in conjunction with consumer complaints as proof of the manufacturer's state of mind. *See, Worsham v. A.H. Robins,* 734 F.2d 676, 687 (11th Cir.1984).

Additionally, the anecdotal reports may be relevant to the issue of causation to the extent that plaintiffs rely on the reports to show the evolution of the scientific literature. *See, Kehm v. Proctor & Gamble,* 724 F.2d 613 (8th Cir.1983), *citing, Ramos v. Liberty Mutual Ins. Co.,* 615 F.2d 334 (5th Cir.1980). In *Kehm* the court found such evidence admissible under FRE 401, by stating:

[E]vidence of similar occurrences 'might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, the standard of care, and causation.'

The Court finds that such reports are reasonably reliable evidence under *Daubert* which satisfies the threshold requirement for admissibility. It is a question for the jury to determine whether the anecdotal reports relied upon by the plaintiffs are sufficient notice to meet the standards set forth in *McKee v. Moore* and as to whether plaintiffs have met their burden of proof as to causation. Accordingly, Sterling's motion to exclude the anecdotal case reports is denied.

*Sterling's Motion to Exclude
Epidemiological Evidence
to Establish Causation*

■ Epidemiological studies examine the pattern of disease in human population. Sterling requests that these studies be excluded from evidence because such studies

(1) are not the type of data reasonably relied upon by experts in forming opinions on medical causation under FRE 703 and *Daubert,* (2) as prejudicial under FRE 403, and (3) as hearsay under FRE 802. Sterling argues that since the medical cause of Reye's Syndrome is unknown, the epidemiological case studies at best show only a statistical association between aspirin and Reye's Syndrome arising from aspirin ingestion during episodes of flu and chicken pox. Thus, Sterling argues that the studies are not relevant or scientifically reliable.

*Daubert* requires the trial court to make a preliminary determination on the validity of the methodology and reasoning underlying an expert's opinion. In this case, plaintiffs proffer the expert opinion of Dr. Neal Benowitz and Dr. Noel Weiss whose opinions are based, in part, on a review of the epidemiological studies. The studies are as follows:

—Arizona study, "Reye's Syndrome and Salicylate Use" (1980)

—Michigan study, "Aspirin as a Risk Factor in Reye's Syndrome" (1980)

—Ohio study, "Reye's Syndrome and Medication Use" (1982)

—Public Health Service Study, "Reye's Syndrome and Medication" (1985)

—Public Health Service Main Study, "Reye's Syndrome and Medication" (1987)

—Yale study, "New Epidemiologic Evidence Confirming that Bias Does Not Explain the Aspirin/Reye's Syndrome Association" (1980)

Sterling argues that these studies are unreliable because they mis-diagnose the illness as Reye's Syndrome, are subject to biases which limits their usefulness, and are not sufficiently "scientific" to serve as the basis for expert testimony. Sterling argues that epidemiological studies only show general causation, and are not evidence of medical causation in an individual case.

The issue to be determined at trial in this product liability case is *legal* causation. To succeed in a tort action, a plaintiff must prove all the essential elements of a claim by a preponderance of the evidence. As stated

in *Sharkey v. Sterling Drug, Inc.,* 600 So.2d 701, 712 (La.App.1992):

> In cases where medical causation is at issue, medical certainty is not the standard. Our courts have recognized that 'medicine is an inexact science at best, but in the courts of law we must be concerned not with concrete and irrefutable truths, but rather the proper distribution of liability based on the preponderance of the evidence.' [citation omitted]
>
> . . . .
>
> It is not unusual for medical experts to be unwilling to state unequivocally the cause of a certain malady. Likewise, we do not require they do so, but only to provide their considered medical opinion on key issues from which the trier of fact makes its own determination.

As in *Sharkey,* Sterling relies heavily on the fact that none of plaintiffs' experts can state unequivocally that aspirin causes Reye's Syndrome. Accordingly courts have permitted expert witnesses to base their opinion of causation on qualified epidemiological or statistical studies. *See, e.g. Sharkey. See, also, Ellis v. International Playtex, Inc.,* 745 F.2d 292, 303 (4th Cir.1984), and *Kehm v. Proctor & Gamble,* 724 F.2d 613, 618–620 (8th Cir.1983).

In *General Electric Co. v. Joiner,* —— U.S. ——, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), the following factors were used to determine whether epidemiological studies qualify as reliable and admissible:

—The studies must be relevant and reliable.

—The subject of the studies must be similar to the case on trial.

—The authors of the study should be able to draw conclusions from the statistics.

—The studies should suggest a link between the increase of the incident of illness and exposure to the product at issue.

—The studies should involve the product at issue.

—The studies should not show exposure to more than one potentially toxic product as a cause of the illness.

—The studies should not have too great an analytical gap between the data and the expert opinion proffered.

The Court finds that the epidemiological studies relied on by plaintiffs meet the standard established in *General Electric.* The studies involve aspirin, which is the product involved in this case. The studies focused on Reye's Syndrome, which is the illness involved herein. Humans, rather than animals, were studied. Conclusions were drawn from the statistic which showed a strong association between aspirin and Reye's Syndrome. The studies were relied upon by various governmental agencies in formulating rules and regulations concerning the type of product at issue in this case. The threshold test of reliability of these studies is shown by:

—The state studies were reported in the Morbidity Weekly Report, a federal government publication and an official publication of the Center for Disease Control.

—The Surgeon General based his opinion in part on the studies.

—The Committee on Infectious Disease of the American Academy of Pediatrics published its cautionary statement based upon the studies.

—The FDA based its notice of proposed rule on the studies and its mandatory labeling was based in part on them.

Sterling attaches several articles challenging the credibility and reliability of epidemiological studies in determining medical causation, particularly in an individual case. Plaintiffs, on the other hand, furnish articles endorsing the methodology used and scientific value of the studies. In *Kehm* the court found epidemiological studies "presumptively reliable" and trustworthy in that they were conducted by the Center for Disease Control and State Health Departments. The court found the studies admissible under FRE 803(8)(c) in that (1) they fall within the public records exception to the hearsay rule, (2) the Center for Disease Control and State Health Departments are skilled in study of epidemiology, (3) their methods are widely accepted by peers, and (4) there appears to be no motive in a public agency conducting the studies except to inform the public fairly and adequately.

Sterling's challenge to the sufficiency of the epidemiological studies in proving causation in an individual case goes to the weight of the evidence rather than to its admissibility. It is the finding of the Court that plaintiffs will be permitted to introduce the epidemiological studies on the issue of causation, in conjunction with a limiting instruction to the jury that such evidence only addresses *probabilities* of causation in the individual case. Accordingly, Sterling's motion to exclude epidemiological evidence to establish causation is denied.

### Sterling's Motion to Exclude the Testimony of Noel Weiss

Sterling seeks to exclude the testimony of plaintiffs' expert witness Dr. Noel Weiss. Dr. Weiss has a medical degree and is an epidemiologist. Dr. Weiss is expected to sponsor the epidemiological case studies on the association of aspirin and Reye's Syndrome. Dr. Weiss will proffer an opinion, based on the results of those studies, that aspirin may cause Reye's Syndrome in children who ingest aspirin in conjunction with the onset of chicken pox.

■ Sterling challenges Dr. Weiss' credentials as an expert to testify on the issue of causation and the reliability of his expert opinion which is based on the epidemiological studies. In that this Court has found the epidemiological studies admissible with a limiting instruction as to statistical probabilities, Dr. Weiss will be permitted to rely on such studies to that extent. Further, the Court finds that Dr. Weiss is qualified as an expert. Dr. Weiss has a medical degree and specializes in the study of epidemiology. He is also the former director of the Office of Epidemiology for the Center of Drugs, with the Food and Drug Administration. Accordingly, Sterling's motion to exclude the testimony of Dr. Noel Weiss on the issue of causation is denied.

### Sterling's Motion to Exclude the Testimony of Neal Benowitz

■ Dr. Benowitz is a clinical pharmacologist who is expected to testify as plain-

tiffs' expert on the issues of notice and causation. The basis of his notice and failure to warn testimony are 22 anecdotal case studies performed between 1962 and 1978. As to the issue of causation, Dr. Benowitz relies upon the biological plausibility through use of animal studies and upon the epidemiological studies through use of statistical data to conclude that aspirin causes Reye's Syndrome.

Dr. Benowitz is a physician certified by the American Board of Internal Medicine, the American Board of Medical Toxicology and the Board of Pharmacology. He is currently the director of the Postdoctoral Fellowship Training Program in Clinical Pharmacology & Experimental Therapeutics at the University of California School of Medicine in San Francisco. As a clinical pharmacologist, Dr. Benowitz studies and understands the mechanisms of how drugs affect humans. Dr. Benowitz has previously headed the Adverse Drug Reaction Surveillance Committee for Northern California, which oversees diagnosis and management of drug toxicities and adverse reactions including Reye's Syndrome.

The Court finds that Dr. Benowitz is qualified as an expert to sponsor the medical literature that was available to the public prior to January 1979 which shows an association between aspirin and Reye's Syndrome. As a physician, with a speciality in toxicology, he is qualified to draw conclusions as to the sufficiency of the reports on the issue of notice. In regard to causation, Dr. Weiss as an epidemiologist will sponsor and offer his opinion as to the epidemiological studies; it would be cumulative for Dr. Benowitz to testify to the same. Additionally, courts have been reluctant to admit evidence of the biological plausibility of Reye's Syndrome through the use of animal studies. Test results on animals are not necessarily reliable evidence of the same reaction in humans. Accordingly, the Court will permit Dr. Benowitz' testimony on the issue of notice and failure to warn through sponsoring pre–1979 anecdotal or medical reports, but exclude his testimony as to the issue of causation.

*Sterling's Motion to Preclude Reference to John Crocker's Animal Study*

■ Dr. John Crocker, received funding from the Canadian government and Sterling in the early 1980's to perform research on young weaning mice to determine whether aspirin could cause Reye's Syndrome in animals. Dr. Crocker issued progress reports of his observations. However, those reports were based upon an "unfinished" study and Dr. Crocker's study remains "unfinished" to date.

Plaintiffs' concede that Dr. Crocker's research is not relevant to the issue of notice or failure to warn. Additionally, this Court finds that such research is irrelevant to the determination of causation, in that the research was "unfinished" and it involved a study of the affect of aspirin on animals rather than on humans.

Plaintiffs argue that Sterling attempted to conceal Dr. Crocker's progress report as part of Sterling's *modus operandi* to cover up any information suggesting any association between Reye's Syndrome and aspirin. Plaintiffs argue that the attempted cover up is relevant concerning the punitive damage issue. Sterling denies any attempted cover up of this information.

The Court reserves ruling on whether the circumstances surrounding the release of Dr. Crocker's progress report is relevant to the punitive damage stage of this proceeding. However, as conceded by the plaintiffs, this evidence is not admissible during the liability phase of the trial and plaintiffs are thus precluding from making any reference to Dr. Crocker's research without first seeking leave of Court.

*Sterling's Motion to Exclude the Testimony of Robert Cunitz*

■ Robert Cunitz, plaintiffs' proposed expert, has a PhD and is a human factors psychologist. Dr. Cunitz intends to testify that Sterling should have warned of the association between aspirin and Reye's Syndrome by January 1979 based on scientific literature in the public domain prior to 1979. Dr. Cunitz will opine that the literature was of a "scientific" nature and established a "reason-

able suspicion" that aspirin might cause Reye's Syndrome. Sterling seeks to exclude the testimony of Dr. Cunitz because he allegedly has no independent knowledge of the association of aspirin and Reye's Syndrome. The only articles that have been reviewed by Dr. Cunitz are those furnished to him by plaintiffs' attorneys for the purpose of this litigation. Dr. Cunitz does not rely on any scientific method in formulating his opinion on the issue of notice and failure to warn.

In his deposition, Dr. Cunitz admits that he does not have any specialized training on determining whether a manufacturer would have a duty to warn. Rather, Dr. Cunitz relies on his training as a psychologist to employ the general principles of informed consent to determine whether a manufacturer has a duty to warn the general public. Specifically, Dr. Cunitz contends that the issue should be resolved under the broad umbrella of human rights and self determination. Dr. Cunitz examines the Nuremberg Trials of the Nazi doctors in 1947 to develop his concept of "informed consent." Based on this foundation, on the issue of Sterling's failure to warn, Dr. Cunitz proposes to provide an expert opinion as "to why and in what form the warning should have been given prior to 1979, the effect of a warning prior to January, 1979, and the inadequacy of the current warning on Sterling's labels."

The Court finds that Dr. Cunitz, as a human factors psychologist, is not qualified to offer an expert opinion on the matters proposed by plaintiffs. There is no indication that Dr. Cunitz' opinion is based on qualified scientific methods or on reliable data. Nor have plaintiffs shown any general acceptance in the scientific or medical community that general concepts of informed consent equate to specific industry standards for warning labels. Neither Dr. Cunitz's credentials nor proposed testimony meet the threshold criteria of admissibility under *Daubert* and as such will be excluded from trial.

Plaintiffs also propose to offer Dr. Cunitz as an expert witness on the issue of punitive damages. In this regard, plaintiffs contend that Dr. Cunitz has studied Sterling's internal documents on Reye's Syndrome and proposes to give an expert opinion on the following:

—the seriousness of the hazard to the public arising from Sterling's conduct.

—the profitability of the misconduct to Sterling.

—the duration of the misconduct and any concealment of it.

—the attitude and conduct of Sterling upon discovery of its conduct or hazard.

—the number and level of employees involved in causing or concealing the misconduct.

—the financial condition of Sterling.

■■■■ The Court finds that as a psychologist, Dr. Cunitz is not qualified to offer an expert opinion on the matters proposed by plaintiffs. There is no indication that a psychologist could lend expertise on Sterling's financial condition or the profitability and marketability of its products. Nor would a human factors psychologist be qualified to offer expertise regarding the "seriousness" of Sterling's purported misconduct. Accordingly, Sterling's motion to exclude the testimony of Dr. Cunitz is granted.

### Sterling's Motion to Exclude the Testimony of Sean Fennel

At the June 17 hearing, the parties advised the Court that the deposition of Dr. Fennel, Sabrina Tyler's treating physician, had not been completed due to Dr. Fennel's overseas residency and poor health. Until further advised by the Court, Sterling's motion to exclude Dr. Fennel's testimony is reserved for later determination.

In summary, consistent with the above findings, limitations and conclusions of the Court, it is therefore ordered that:

Sterling's Motion to Exclude Anecdotal Case Reports and Case Series is denied.

Sterling's Motion to Exclude Epidemiological Evidence to Establish Causation is denied.

Sterling's Motion to Exclude the Testimony of Noel Weiss is denied.

Sterling's Motion to Exclude the Testimony of Neal Benowitz is denied.

Sterling's Motion to Preclude Reference to John Crocker's Animal Studies is granted.

Sterling's Motion to Exclude the Testimony of Robert Cunitz is granted.

Sterling's Motion to Exclude the Testimony of Sean Fennel is reserved.

**IT IS SO ORDERED.**